The STATE of Ohio, Appellee,

v.

SMITH, Appellant.

[Cite as *State v. Smith* (1993), 92 Ohio App.3d 172.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63240.

Decided Nov. 24, 1993.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *L. Christopher Frey,* Assistant Prosecuting Attorney, for appellee.

*Jean M. Gallagher,* Assistant Public Defender, for appellant.

DYKE, Chief Judge.

Defendant-appellant, Eric J. Smith, appeals his conviction for possession of criminal tools (R.C. 2923.24) and aggravated trafficking (R.C. 2925.03[A][7] ).[1]

In his first assignment of error, appellant claims that the trial court impermissibly denied his Crim.R. 29 motion because the evidence was insufficient to support his conviction for possession of criminal tools. In his second assignment of error, appellant claims that he proved entrapment by a preponderance of the evidence. Upon review we find that appellant's first assignment of error has merit. For the reasons which follow, the judgment of the trial court is reversed in part and affirmed in part.

The following evidence was adduced at trial.

On June 12, 1991, a confidential reliable informant ("CRI") contacted Detective Gary Gingell, a member of the Cleveland Police Department's Second District Vice Unit, and told him that he was successful in setting up a controlled purchase of cocaine from the appellant. The CRI indicated that in accordance with his request for "weight" (a large quantity of the drug), the appellant arranged for him to buy four ounces of cocaine for $4,400. In response to this information, Detective Gingell organized a "buy-bust" operation whereby the CRI, wired with a microphone and body transmitter, completed a purchase of cocaine utilizing marked money. Detective Charles Escalante monitored the transaction via headphones and binoculars.

Escalante testified that from an unobstructed surveillance point, he observed the appellant drive a red Cadillac into a parking lot located at West 28th Street and Detroit Avenue where the CRI was already parked. The appellant spoke with the CRI, went to a pay phone and placed a call. He returned and told the CRI that "the man with the 4 'O's' [ounces] is on his way" and that "Pooh was cool." This latter statement meant that appellant's supplier, one Terry Burse

---

1. The appellant was convicted of aggravated trafficking because the offense carried a school-yard specification. See R.C. 2925.03(C)(7)(a).

(a.k.a. "Pooh"), was reliable. Several minutes later, the appellant placed another call from the pay phone, returned to the CRI's vehicle and assured him that the cocaine would arrive within five minutes. Shortly thereafter, the appellant placed a third call but hung up immediately upon seeing Burse enter the parking lot in his 1984 "T-top" Chevrolet.[2] Burse's stepsister, Kaesha Harris (appellant's co-defendant), occupied the front seat.

The appellant met briefly with Burse. Burse then returned to the passenger door of the Chevrolet where Harris was seated. Harris allegedly reached into her shirt, removed a sock containing 106.24 grams or fourteen rocks of cocaine and handed the sock to Burse, who handed it to the appellant. The appellant entered the CRI's vehicle, removed the cocaine from the sock and handed it him. The CRI then pumped the brakes, signaling Detective Escalante to radio the arresting officers. Detectives Heffernan and Gingell corroborated Escalante's testimony.

The CRI testified that he had asked a female friend whether she knew anyone who sold "large quantities of cocaine." The woman subsequently introduced him to the appellant. The CRI stated that when he met the appellant, they shook hands and exchanged beeper numbers. The CRI further stated that when he asked the appellant whether he could supply "weight," the appellant stated that he could get the CRI whatever he wanted. The CRI also stated that the appellant paged him, indicating that he was prepared to sell cocaine on June 10, 1991. The CRI postponed the purchase until June 12, 1991 to accommodate the vice squad. The CRI admitted to a lengthy criminal record and favorable sentencing as a result of his enrollment in the informant program.

The appellant testified that he met with the CRI, at the CRI's request, on four occasions. On one occasion he accepted and used cocaine from the CRI. On another occasion he met the CRI at a bar, and accepted another small amount of cocaine. The appellant stated that he met the CRI for drinks because he thought the CRI "was lonely." The CRI eventually told the appellant that his "connection" was dry and that he needed the appellant to "hook him up." The appellant stated that the only reason he arranged the sale was because of the CRI's repeated calls. He further stated that he set up the deal as a "favor" to the CRI for providing him with free cocaine. The appellant repudiated his prior written statement, which included an admission that during the three months which preceded his arrest, he set up "15 cocaine deals between Pooh and other persons." He explained that he made this confession because the police promised that he would only be charged with possession of criminal tools. He further

---

2. Escalante testified that he had good visualization because the inserts on Burse's T-top roof had been removed.

stated that he misunderstood the question which elicited the above admission. He claimed that the statement referred not to fifteen "deals" but to fifteen occasions when he purchased cocaine from Burse for personal use.

The jury found the appellant and co-defendant, Kaesha Harris, guilty on all counts. The court, however, vacated the appellant's cocaine possession charge pursuant to R.C. 2941.25 (allied offenses).

I

"Mr. Smith's rights under Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution were violated and he was entitled to a Crim.R. 29 acquittal when his conviction for possession of criminal tools was not supported by sufficient evidence."

Crim.R. 29 requires a trial judge to enter a judgment of acquittal if the evidence is insufficient to sustain a conviction.

When reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that each element of the offense was proven beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

R.C. 2923.24 proscribes the possession of criminal tools and provides, in relevant part:

"(A) No person shall possess or have under his control any substance, device, instrument, or article with purpose to use it criminally.

"(B) Each of the following constitutes prima-facie evidence of criminal purpose:

" * * *

"(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating such item is intended for criminal use."

▇▇▇ Possession of an object may be either actual or constructive. *State v. Haynes* (1971), 25 Ohio St.2d 264, 54 O.O.2d 379, 267 N.E.2d 787; *State v. Bey* (Feb. 7, 1991), Cuyahoga App. No. 5793, unreported, 1991 WL 12950. Constructive possession requires that the defendant be able to exercise dominion or control over the object. *State v. Wolery* (1976), 46 Ohio St.2d 316, 75 O.O.2d 366, 348 N.E.2d 351; *State v. Pruitt* (1984), 18 Ohio App.3d 50, 18 OBR 163, 480 N.E.2d 499.

■ The appellant was convicted of possessing Terry Burse's 1984 Chevrolet, Burse's portable phone and $500 found in co-defendant, Harris's purse. The record fails to demonstrate, however, that the appellant possessed any of these objects in an actual or constructive manner.

There is no evidence that the appellant operated Burse's car or used Harris's money for the purpose of consummating the instant sale. There is also no evidence that Burse gave the appellant his portable phone number or that the appellant called Burse on his portable phone. On the contrary, the record demonstrates that the appellant contacted Burse by dialing the number to his paging device, not his portable phone. Hence, the appellant never physically possessed these objects nor was he given the power to exercise dominion or control over them. See *State v. McShan* (1991), 77 Ohio App.3d 781, 603 N.E.2d 1076.[3] See, also, *State v. Thompson* (July 18, 1991), Cuyahoga App. Nos. 58803 and 58834, unreported, 1991 WL 144337.

The state is correct in its assertion that the appellant, as an aider and abettor, can be prosecuted and punished as a principal pursuant to R.C. 2923.03. This prerogative, however, does not relieve the state from proving actual or constructive possession beyond a reasonable doubt. R.C. 2901.05(A). This, the state failed to do. Appellant's first assignment of error is, therefore, sustained.

## II

"When Mr. Smith proved entrapment, the verdict is against the manifest weight of the evidence and the judgment must be reversed and the matter must be remanded for a new trial."

"The defense of entrapment is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." *State v. Doran* (1983), 5 Ohio St.3d 187, 5 OBR 404, 449 N.E.2d 1295, paragraph one of the syllabus.

" '[E]ntrapment is not established when government officials merely afford opportunities or facilities for the commission of the offense' and it is shown that the accused was predisposed to commit the offense." *Id.* at 192, 5 OBR at 409, 449 N.E.2d at 1299, quoting *Sherman v. United States* (1958), 356 U.S. 369, 372, 78 S.Ct. 819, 820–821, 2 L.Ed.2d 848, 851.

---

3. In *McShan,* this court found that evidence was insufficient to support a front-seat passenger's conviction for possession of criminal tools based upon the alleged use of the automobile in the drug transaction.

"The accused has the burden of going forward as well as the burden of proving the defense by a preponderance of the evidence." R.C. 2901.05(A).

■ The appellant, relying on *Doran, supra,* claims that he proved entrapment by a preponderance of the evidence because the record demonstrates (1) that he had no previous involvement in the criminal activity charged, (2) that he did not readily acquiesce to the inducements offered by the police, (3) that he lacked expert knowledge in the area of the criminal activity charged, (4) that he did not have ready access to contraband, and (5) that he was unwilling to involve himself in the criminal activity. *Doran,* 5 Ohio St.3d at 192, 5 OBR at 408–409, 449 N.E.2d at 1299–1300.

While it is true that the appellant had no prior conviction for trafficking, the record demonstrates a substantial amount of conflicting evidence with respect to every factor cited in *Doran.*

### *Doran* Factor 1—Previous Involvement

The appellant's written statement, which was read to the jury, included an admission of prior dealing. While the appellant repudiated this statement, claiming that he "misunderstood" Detective Escalante's question,[4] the state challenged the appellant's credibility by asserting that he had ample opportunity to correct his statement. Detective Escalante further eroded the appellant's credibility by stating that the appellant was "relaxed and cooperative" when he gave the statement, that he reviewed the statement before signing sections which endorsed the truth and voluntariness of the statement and that he was given an opportunity to "add" to the statement. The appellant added only that he "didn't do crack." He just "set up the deal."[5]

Lastly, the appellant emphasizes the fact that Gingell and Escalante had little or no personal knowledge of him or his alleged drug activities. Detective Heffernan, however, stated that despite his vague recollection of the appellant, the vice squad had been receiving intelligence information about the appellant's involvement in "drug sales" prior to his arrest.

Hence, the record demonstrates sufficient evidence to support an inference of previous involvement in drug sales.

---

**4.** "[Escalante's question]: How many times have you set up cocaine deals between Pooh and other persons?

"[Appellant's answer]: About 15 times over the last three months."

**5.** Appellant's statement that he "didn't do crack" stands in direct conflict with his testimony at trial. At trial the appellant attempted to prove "entrapment" by claiming that he did use crack and bought crack from Burse for personal use.

## *Doran* Factor 2—Ready Acquiescence

The appellant never strongly resisted or flatly rejected the CRI's proposals. On the contrary, when the CRI requested "weight," the appellant did not object to or reject the request, he merely claimed that he "didn't know" any one who could supply large amounts of cocaine. The CRI disputed the appellant's statement by testifying that the appellant could get him anything he wanted.

While the appellant testified that he felt pressured by the CRI's four to five requests,[6] the record fails to demonstrate even the suggestion of a threat on the part of the CRI. Appellant's written statement is similarly silent with respect to threats or favors. The only statement that the appellant made with respect to the CRI, immediately after his arrest, was that the CRI "approached" him and "wanted to know where he could get four ounces of cocaine." Hence, the record demonstrates sufficient evidence to support an inference that the appellant readily acquiesced to the CRI's inducements.

## *Doran* Factor 3—Expert Knowledge

Appellant's repudiated statement of prior dealing supports an inference of expert knowledge as does the drug-related, street language he used both before and during the instant sale *to the CRI*. Moreover, the state presented evidence that Burse placed twenty-nine cellular phone calls to the appellant's home during a thirty-two day period prior to his arrest. Hence, ample evidence was presented to support an inference that the appellant possessed expert knowledge regarding drug trafficking.

## *Doran* Factor 4—Ready Access

In addition to the admission of prior dealing, the appellant also admitted that he lived across the street from Burse, a convicted drug dealer and that he did not need to page Burse to obtain drugs. Hence, the record demonstrates substantial evidence to support an inference that the appellant had ready access to cocaine.

## *Doran* Factor 5—Willing Involvement

The record demonstrates that the appellant met with the CRI on four occasions; that the appellant permitted the CRI to meet him at his home; that the appellant did not abandon the sale when it was postponed from June 10 to June 12; that the appellant promised the CRI that he would not sell him baking

---

6. In *State v. Jones* (Jan. 10, 1991), Athens App. No. 1647, unreported, 1991 WL 13783, the court found that five phone calls in one day were not sufficient to prove entrapment.

powder[7]; that the appellant assured the CRI that Burse was reliable; and that the appellant paged Burse three times in order to consummate the sale.[8] Hence, sufficient evidence was presented to support an inference that the appellant willingly involved himself in the sale.

"A reviewing court will not reverse a trier of fact's verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Smith* (1991), 61 Ohio St.3d 284, 289, 574 N.E.2d 510, 516; *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus.

■ The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

The record demonstrates substantial evidence to support the jury's verdict. Appellant's admission of prior dealing, his close communications with a known drug dealer, his ready access to drugs and his willingness to return a favor which involved a $4,000 sale of cocaine supports the jury's verdict that the appellant failed to prove that he lacked predisposition to commit the offense of aggravated trafficking. Appellant's second assignment of error is therefore overruled.

For the reasons stated *supra,* the judgment of the trial court with respect to appellant's conviction for possession of criminal tools is reversed and the corresponding sentence for that offense is vacated. The court's judgment with respect to the appellant's aggravated trafficking conviction is affirmed.

*Judgment accordingly.*

JAMES D. SWEENEY and BLACKMON, JJ., concur.

---

7. When the CRI warned the appellant not to sell him baking powder, the appellant stated, "I don't do that shit." (State Exhibit No. 1—Audio cassette of taped conversation between the Appellant and the CRI.)

8. Appellant argues in his reply brief that the reason he paged Burse a third time was because the CRI asked him to. However, Detective Escalante, who monitored appellant's conversation, testified that it was the appellant who initiated the paging:
   "[THE PROSECUTOR]: Detective Escalante, after this second page, what happened?
   "[ESCALANTE]: [The CRI] had indicated to him [the appellant] that he's in a hurry, what's up. After about five minutes elapsed nobody showed up. *Red* [the appellant] *says I'm going to give him one more try."* (Emphasis added.)