JOURNAL ENTRY AND OPINION
This is an appeal from guilty verdicts following a bench trial before Judge Brian J. Corrigan. Athena Williams claims her convictions for two counts of felonious assault and one count of possession of criminal tools should be overturned because her lawyer failed to properly present her self-defense theory, the evidence showed she could have committed only one act of felonious assault, and she was not in possession or control of the vehicle charged as a criminal tool. We affirm.
The record contains the following testimony: In November 1999 Williams, then twenty-five years old, lived in Warrensville Heights with her children in an apartment paid for by her boyfriend, Richard Racz, a merchant marine sailor. Williams was in possession of Racz's 1998, four-door Plymouth Breeze while he was away working and she let her friend, Jabar Durden, use it, apparently in exchange for Williams' use of Durden's Sega Dreamcast video game system. The car was damaged while in Durden's possession, and Williams sold the video game system to a pawn shop. Whether she sold the system to ensure payment for the car damage, or simply because she needed the money was unclear. When Durden demanded payment for the video game system, Michael Anderson, who had begun seeing Williams while Racz was away, offered to pay for it when he got his paycheck.
In the early afternoon of November 23, 1999, Durden, still in possession of the Plymouth, appeared at Williams' apartment and was told that later that evening Anderson would get the money from his cousin. At 5:30 or 6:00 p.m., Durden picked up his girlfriend, Khalia Johnson, and drove to Williams' apartment. After a brief visit, Durden, Johnson, Williams and Anderson got in the car, ostensibly to drive to Anderson's cousin's house in Cleveland Heights. At Williams' request, Durden drove the car; Johnson rode in the front passenger seat, Anderson was seated behind Durden, and Williams behind Johnson.
At times lost, the four drove around for over an hour, when finally Anderson told Durden to pull into a driveway on Brinkmore Road in Cleveland Heights. Anderson and Williams got out of the car, disappeared behind some hedges, and returned a couple of minutes later. Anderson said his cousin wanted a ride to Warrensville Heights and would accompany them. As they sat in the car, Anderson or Williams suddenly screamed, and the pair began striking at Durden with knives. Anderson wounded Durden several times, and Williams stabbed Johnson at least once. Johnson got out of the car, opened the rear passenger door and disarmed Williams.
Durden also got out of the car, and he and Johnson ran into a nearby garage where a real estate agent, present on the property to open the residence for a prospective buyer, called emergency assistance. At the scene, Johnson turned a knife over to the police, she and Durden reported they had been stabbed, claimed to not know the last names of their assailants and described the car and Williams' apartment to the police. Durden was treated for stab wounds in the neck, head, face, and arms, and Johnson for wounds to her shoulder and hand.
Anderson drove Williams to her mother's home and an ambulance was called to take her to a hospital for treatment of a stab wound to her leg. Warrensville Heights police officer Randy Sobczyk was dispatched to investigate Williams' injury and both she and Anderson told him she had been assaulted and robbed at a local grocery store.
Williams went to live with her father in Cleveland and the Cleveland Heights police were unable to locate either her or the car. When Racz returned in mid-December 1999, he reported the missing car, as well as a possible break-in at his apartment, to Greg Curtin, a Warrensville Heights police detective and a security officer at the apartment complex, who was aware of Williams' robbery report and the Cleveland Heights investigation into the wounding of Durden and Johnson. In Detective Curtin's presence, Racz used a speaker phone to call Williams, at her father's home, to ask about his car. Williams stated that she was planning to leave the area and go to Virginia because she stabbed that bitch.
Cleveland Heights police arrested Williams and Anderson. When Racz got his car back, he found a knife hidden under the floormat in the rear, driver's side that, along with the one turned over by Johnson, belonged to a set in his apartment.
Williams was indicted on two counts of felonious assault by means of a deadly weapon, R.C. 2903.11(A)(2), (second-degree felonies), and one count of possession of criminal tools, R.C. 2923.24, a (fifth-degree felony). The State contended Williams stabbed Johnson and, although she had not stabbed Durden, was responsible for Anderson's assault on him on an accomplice theory. Furthermore, it claimed that the pair employed the car as a criminal tool as part of a planned assault on Durden and Johnson, and to hide Anderson's knife.
At trial Williams admitted stabbing both Durden and Johnson, but claimed she did so in self-defense, striking Durden in the arm only after he reached into the back seat of the car and grabbed her arm, and wounding Johnson only after she opened the rear passenger door and attacked her. She testified she defended herself with a pocket knife and that Johnson had stabbed her with the knife she had turned over to police.
The judge found Williams guilty on all three counts and, after reviewing a presentence report, sentenced her to two years in prison on each count of felonious assault and six months in prison for possession of criminal tools, all counts to run concurrent. At the sentencing hearing the judge did not inform Williams that she was subject to mandatory or discretionary post-release control, and they are not part of her sentence.
The first of her two assignments of error states:
 I. THE DEFENDANT WAS DENIED HER CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HER ATTORNEY FAILED TO RESEARCH THE ELEMENTS OF SELF-DEFENSE IN PREPARATION FOR ARGUING SELF-DEFENSE AT TRIAL.
Williams claims her lawyer stated in closing argument that he had not researched the issue of whether she had a duty to retreat before defending herself against Durden's and Johnson's claimed attacks. In order to show constitutionally ineffective assistance of counsel, a defendant must show that his lawyer's representation fell below reasonable professional standards, and that he was prejudiced as a result.[1] Prejudice exists if, but for the lawyer's errors, there is a reasonable probability the outcome of the trial would have been different.[2] If we can determine that no prejudice occurred, we avoid the question of whether the lawyer's conduct violated professional standards.[3]
The State had argued that Williams had the burden to prove self-defense by the preponderance of the evidence, and that she failed to prove, among other elements of that defense, that she did not violate a duty to retreat before using force.[4] Her lawyer responded:
 With regard to the duty to retreat, I didn't brief that issue for this trial, I am not entirely clear that there is a duty to retreat in this situation involving use of non-lethal force. But in any event, there was no opportunity to retreat.
The lawyer then argued that because of the close quarters of the car, and testimony that Durden grabbed her arm and Johnson attacked her by opening the rear passenger door, Williams had no choice but force in order to escape the attack. Although she claims her lawyer failed her, she has not explained how his deeper understanding of the retreat issue could have led to presentation of different evidence or argument, or how that could have affected the verdict. The primary issue in her self-defense case was proof that she was in fact the victim and not the perpetrator of the attack. Williams' lawyer viewed the retreat question as a minor issue — if he could prove she was the victim of an attack, she would likely be excused from any duty to retreat under the circumstances. Moreover, the State correctly points out that because the case was tried to the bench and not a jury, we can presume the judge applied the correct law in the absence of evidence to the contrary.[5] On the facts here, it appears the judge did not reach the issue of retreat because the evidence showed Williams was the aggressor, and not the victim of an attack.
Williams agreed that Anderson stabbed Durden with a knife taken from a set of kitchen knives in her apartment; Johnson turned over to the police a knife from the same set she claimed she had taken from Williams after the attack, and Williams claimed that Johnson attacked her with a knife from her kitchen set and she used only a pen knife in self defense. Despite the fact that Williams apparently did suffer an injury at some point, the likelihood of Anderson and Johnson independently and coincidentally taking kitchen knives from the same set and using them in this incident is remote. Regardless of any retreat issue, the judge reasonably could have concluded that Williams joined Anderson in attacking Durden and Johnson with a pair of kitchen knives, rather than accept Williams' relatively tenuous alternative. The first assignment of error is overruled.
The second assignment states:
 II. THE COURT'S DECISION FINDING THE DEFENDANT GUILTY OF THE SECOND COUNT OF FELONIOUS ASSAULT WAS NOT SUPPORTED BY SUFFICIENT PROBATIVE EVIDENCE, AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THIS OFFENSE HAD BEEN COMMITTED.
A sufficiency claim raises a narrow question of law that we review de novo.[6] We review the record to determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[7] As the question of sufficiency of the evidence presents a question of law, it does not allow the reviewing court to weigh the evidence.[8]
In contrast to the sufficiency review, a manifest weight challenge allows the appellate court to review the evidence more broadly, and sit as a thirteenth juror.[9] The purpose of the manifest weight review is to determine whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction.[10]
Although the scope of review broadens, the standard of review is more deferential. Under the manifest-weight test:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.[11]
Williams claims she should not have been convicted of felonious assault on Durden because there was no evidence that she stabbed him. Johnson testified that Williams attempted to stab Durden, but was unsuccessful, and Durden testified that, although he thought Williams had stabbed him, he was not certain she had done so because he was stabbed several times and could not identify any particular wound she inflicted. Williams, however, admitted stabbing Durden in an opening statement and by testimony, thus defeating her claims of evidentiary insufficiency.
Furthermore, the State's case did not rely on, nor did it attempt to present, any evidence that Williams stabbed Durden, but instead relied on an accomplice theory, arguing that her complicity made her responsible for Anderson's acts as a principal.[12] Williams has not argued that the evidence of her accomplice liability is insufficient or otherwise defective, and nothing in the record indicates any glaring deficiency in this theory. The judge reasonably could have concluded that Anderson and Williams planned and carried out the assault together, and that she was liable for his acts as though she committed them herself.
Finally, although not stated in the assignment of error, Williams contends that the evidence was insufficient to sustain her conviction for possession of criminal tools under R.C. 2923.24. While we could refuse to address this claim of error because it was not separately argued in the brief,[13] we find it without merit in any event. The offense of possession of criminal tools requires the defendant (1) to possess or control (2) a substance, device, instrument or article, (3) with purpose to use it criminally.[14] Williams argues that she did not possess or control the car, because Durden had borrowed it from her and was the driver at the time. Durden and Johnson, however, testified that before they got in the car, Williams asked Durden to drive. Moreover, she took possession of the car after the incident and it was used at that time to conceal the weapon Anderson used to stab Durden. The evidence is sufficient to show Williams' control over the car,[15] and under the circumstances the judge reasonably concluded that the car was a part of Anderson's and Williams' plan to assault Durden and Johnson. We overrule the second assignment of error.
Judgment affirmed.
It is ordered that the appellee recover from appellant costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, ADM. J., CONCUR; JAMES D. SWEENEY, J., CONCURS IN JUDGMENT ONLY WITH SEPARATE OPINION.
[1] Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693; State v. Johnson (2000), 88 Ohio St.3d 95,108, 723 N.E.2d 1054, 1067.
[2] Strickland, 466 U.S. at 694, 104 S.Ct. at 2068,80 L.Ed.2d at 698.
[3] Id., at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699.
[4] State v. Williford (1990), 49 Ohio St.3d 247, 249, 551 N.E.2d 1279,1281.
[5] State v. Martin (1955), 164 Ohio St. 54, 59, 57 O.O. 84,128 N.E.2d 7, 12.
[6] State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541,546.
[7] (Emphasis sic.) State v. Stallings (2000), 89 Ohio St.3d 280,289, 731 N.E.2d 159, 171 (quoting Jackson v. Virginia (1979), 443 U.S. 307,319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573).
[8] State v. Martin (1983), 20 Ohio App. 172, 175, 20 OBR 415,485 N.E.2d 717, 720.
[9] Thompkins, 78 Ohio St.3d at 387, 687 N.E.2d at 546-47.
[10] Stallings, 89 Ohio St.3d at 289, 731 N.E.2d at 171 (quoting State v. Getsy (1998), 84 Ohio St.3d 180, 193, 702 N.E.2d 866, 882).
[11] Martin, 20 Ohio App.3d at 175, 485 N.E.2d at 720-21.
[12] State v. Ensman (1991), 77 Ohio App.3d 701, 703, 603 N.E.2d 303; R.C. 2923.03(F).
[13] App.R. 12(A)(2).
[14] R.C. 2923.24.
[15] Cf. State v. Smith (1993), 92 Ohio App.3d 172, 176, 634 N.E.2d 659,661 (inability to exercise control over object defeats criminal tools charge).