[Cite as *State v. Johnson*, 2013-Ohio-2692.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 98966**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## SHAYLA JOHNSON

DEFENDANT-APPELLANT

---

## JUDGMENT:
REVERSED, VACATED, AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-556207

**BEFORE:** Rocco, J., Boyle, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** June 27, 2013

**ATTORNEY FOR APPELLANT**

Marcus S. Sidoti
Jordan & Sidoti, L.L.P.
50 Public Square
Suite 1900
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGuinty
Cuyahoga County Prosecutor

By: Marcus A. Henry
Assistant County Prosecutor
Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

KENNETH A. ROCCO, J.:

**{¶1}** Defendant-appellant Shayla Johnson ("Johnson") appeals from her convictions for drug trafficking and drug possession, both with firearm specifications, and from her conviction for possessing criminal tools. On appeal, Johnson argues that the trial court erred in denying her motion for acquittal under Crim.R. 29 because there was insufficient evidence to sustain the convictions. We agree and so we reverse the trial court's final judgment and remand the case to the trial court with instructions to vacate the convictions.

**{¶2}** Johnson was indicted for two counts of drug trafficking under R.C. 2925.03(A)(1) and 2925.03(A)(2); for drug possession under R.C. 2925.11(A); and for possessing criminal tools under R.C. 2923.24(A). All of the counts were fifth-degree felonies, and contained forfeiture specifications under R.C. 2941.1417(A). The drug trafficking and drug possession counts all included a one-year firearm specification under R.C. 2941.141(A). The case proceeded to a bench trial.

**{¶3}** Eva Sanders ("Sanders"), a codefendant, testified on behalf of the state. Sanders, who was addicted to crack cocaine, explained that she and co-defendant, Carlene Wiley ("Wiley"), a drug dealer, had a relationship where Sanders would bring customers to Wiley, and, in exchange, Wiley would give Sanders crack cocaine for her personal use.

**{¶4}** On the date of the incident, Sanders had seen Wiley earlier that afternoon, and, at that point, Wiley was alone, selling crack cocaine on a bicycle. Wiley told

Sanders that she had gotten into an altercation, that someone had tried to rob her, and that she would be back later.

{¶5} Sanders saw Wiley later that evening sitting in the driver's seat of a parked car. Johnson was sitting in the passenger seat. Sanders had known Wiley for over ten years, but this was the first time Sanders had ever seen Johnson. Sanders had $20, so she approached Wiley, purchased some crack cocaine, and went into a building to smoke it in the hallway. Sanders wanted to get high again. Knowing that Wiley would give Sanders more crack cocaine if Sanders could bring Wiley a customer, Sanders started looking around for a potential customer.

{¶6} Meanwhile, Detective Mike Duller ("Det. Duller") had provided marked currency ("marked buy money") and a body wire to a confidential informant ("the informant"). Det. Duller took the informant to a parking lot in an area known for drug activity so that the informant could attempt to procure crack cocaine with the marked buy money. Det. Duller heard on the wire that the informant was introduced to Sanders.

{¶7} The informant told Sanders that he wanted to purchase $20 in crack cocaine and Sanders told the informant that she could obtain it for him. Sanders walked over to the driver's side of the car where Wiley was sitting and dropped the $20 in marked buy money in Wiley's lap. Wiley gave Sanders the crack cocaine, and Sanders walked away, placing the drugs on the ledge of a building. During the course of the transaction, Johnson was "just sitting there." Tr. 130. Sanders did not observe any firearms in the car.

{¶8} After Sanders placed the crack cocaine on the ledge, Det. Duller received a signal from the informant that the drug transaction had been completed. Law enforcement arrived at the scene to arrest Sanders, Wiley, and Johnson.

{¶9} A body search of Wiley revealed $24 in unmarked cash, $20 of marked buy money, a firearm, and crack cocaine. The crack cocaine was recovered from the front waistband of Wiley's pants. The firearm was recovered from the back of Wiley's pants.

{¶10} Law enforcement searched Johnson and recovered a cellular phone and $466 in cash. None of the currency found on Johnson was marked buy money. No weapons were recovered from Johnson. No drugs were recovered from Johnson.

{¶11} Wiley testified that she and Johnson were friends, that they had met up that evening to go out, and that, on the way, Wiley made a stop to sell some crack cocaine. Wiley testified that Johnson did not know that Wiley had any contraband on her person. Wiley stated that they took Johnson's car, but that Wiley drove, because Wiley had a driver's license and insurance. Wiley testified that her firearm was tucked in the back, left side of her pants and that she was wearing a large hoodie that was zipped up. Wiley denied having sold crack cocaine to Sanders earlier that day, but acknowledged that she sold the crack cocaine that Sanders had purchased for the informant. Wiley testified that she did not make the transaction in the car, but rather, had gotten out of the car to conduct the transaction. Wiley also testified that she had not given Johnson money to hold that night.

{¶12} Det. Duller, two other members of law enforcement involved in the arrests, and Sanders all testified that some drug dealers split the work between them so that one person holds the drugs and another person holds the money that was earned from the drug sale. The latter person is known as "the bank." Det. Duller explained that, under this arrangement, the dealer would "pass off the money to [the bank] to protect their investment when the police come and snatch them up. If that should happen, they're found with maybe some drugs but not found with any money. As a result, there's no * * * business loss." Tr. 54. Det. Duller testified that, while not "not definite," he believed that Johnson "was probably the bank." Tr. 60, 61. Although Det. Duller acknowledged that he had no personal knowledge of how Johnson obtained the $466, he theorized that the money constituted drug-sale proceeds. Sanders testified that she had no knowledge that Johnson was acting as the bank.

{¶13} At the conclusion of the bench trial, the trial court found Johnson guilty of drug trafficking under R.C. 2925.03(A)(1), drug possession under R.C. 2925.11(A), and possessing criminal tools under R.C. 2923.24(A); the first two convictions included a one-year firearm specification under R.C. 2941.141(A). The trial court also found that the cell phone, the gun, and all of the money recovered were subject to forfeiture. The trial court found Johnson not guilty of drug trafficking under R.C. 2925.03(A)(2). Johnson was sentenced to 18 months imprisonment and to postrelease control. Johnson's notice of appeal presents two assignments of error for our review.

> I. The trial court erred in denying Johnson's Crim.R. 29(A) motion for acquittal, because there was insufficient evidence

to sustain the convictions.

II.   The convictions were against the manifest weight of the evidence.

**{¶14}** We sustain the first assignment of error because there was insufficient evidence to support the convictions.   We decline to address the second assignment of error because it is moot.

**{¶15}** Under Crim.R. 29, a motion for judgment of acquittal should be granted if the evidence is insufficient to sustain a conviction for the offense.   Viewing all the facts in a light most favorable to the prosecution, we will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all elements of the crime beyond a reasonable doubt.   *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.   We examine each conviction in turn.

### *Drug Trafficking*

**{¶16}**   In order to convict Johnson for drug trafficking under R.C. 2925.03(A)(1), the state had to demonstrate that Johnson knowingly sold or offered to sell the crack cocaine to Sanders.   The state proceeded on the theory that Johnson aided and abetted Wiley in the crack cocaine sale.   "'Aiding and abetting contains two basic elements: an act on the part of the defendant contributing to the execution of a crime and the intent to aid in its commission.'"   *State v. Wilcox*, 8th Dist. No. 90492, 2008-Ohio-4249, ¶ 19, quoting *State v. Sims*, 10 Ohio App.3d 56, 58, 460 N.E.2d 672 (8th Dist.1983).   But

"[m]ere presence during the commission of a crime * * * does not constitute aiding and abetting." *Wilcox*, citing *State v. Peavy*, 8th Dist. No. 80480, 2002-Ohio-5067, ¶ 32.

{¶17} The state relies on Sanders's testimony to support its position that there was sufficient evidence to convict Johnson for drug trafficking. Sanders testified that she had earlier seen Wiley selling crack cocaine on a bicycle, and that Wiley told Sanders that people had tried to rob her. Several hours later, Wiley returned in Johnson's car with Johnson, and Wiley sold Sanders crack cocaine. According to the state, one could infer that Wiley came back in Johnson's car in order to protect herself from would-be robbers, and that Johnson "aided Wiley in the trafficking by providing a car to Wiley to sell crack cocaine." State Br. at 8.

{¶18} We have reversed convictions for drug trafficking, drug possession, and possession of criminal tools on strikingly similar facts to those presented in the instant case. In *State v. Whyte*, 8th Dist. No. 59779, 1992 Ohio App. LEXIS 343 (Jan. 30, 1992), the appellant was the passenger in a car that was pulled over by law enforcement. The car belonged to the appellant's girlfriend, but the codefendant was operating the vehicle. Law enforcement searched the driver and found cocaine and a butterfly knife. A search of appellant uncovered $250 in cash ($125 of which was Jamaican money) and an address book containing phone numbers for Manhattan, the Bronx, Philadelphia, Puerto Rico, Miami, and Washington D.C. *Id.* at *2-3. No drugs or weapons were recovered from the appellant.

{¶19} The state argued that the following evidence supported the convictions: the car was owned by the appellant's girlfriend; both appellant and the driver were "extremely nervous" when the car was stopped for a traffic violation; the multiple bags of cocaine were found "loosely wrapped (not in the pockets)" in a coat laying on the driver's lap, about six to ten inches from the appellant; the appellant and the driver listed the same name on their booking slips for who to notify; although appellant was unemployed, he was carrying $250 in cash; and appellant's address/phone book was a "prototypical drug book." *Id.* at *10.

{¶20} We concluded that the evidence did not support a finding that appellant aided and abetted cocaine trafficking. In reaching this conclusion, we explained that "[o]ur penal laws and constitution ha[ve] not as yet endorsed guilt by association. An individual must be tried for crimes he commits and not those committed by his associates unless there is strong evidence linking the accused to the crimes of his associate." *Id.* at *13.

{¶21} In contrast, in *State v. Capretta*, 8th Dist. No. 88986, 2008-Ohio-138, ¶ 17, we determined that there was sufficient evidence to convict the appellant of aiding and abetting drug trafficking where the appellant took actions that furthered the execution of the crime. In *Capretta*, the appellant drove the co-defendant to two drug sales on two separate occasions. In the first instance, she moved into the back seat of the car so that the buyer could sit in the front seat, and then she got back into the driver's seat and drove the codefendant away. Two days later, she again drove the codefendant to the same

location as the previous drug sale, left the vehicle so that the buyer could get into the car, returned to the car at the conclusion of the sale, and drove the codefendant away. We concluded that, "[b]ased on the circumstances of this case, [appellant's] intent to assist in the distribution and sale of the drugs can be inferred." *Id.*

{¶22} In the instant case, the state's evidence is even less compelling than the evidence presented in *Whyte*. The fact that Wiley conducted the single drug transaction in Johnson's car and in Johnson's presence does not, standing alone, establish that Johnson aided and abetted Wiley in trafficking drugs. To conclude otherwise would be to endorse guilt by association. Sanders testified that she approached the driver's side of the car, placed the marked buy money in Wiley's lap, and that Wiley gave Sanders the crack cocaine. There was no testimony that Johnson took any action to facilitate the transaction between Wiley and Sanders. Unlike the appellant in *Capretta*, who drove to the sale and moved about in order to facilitate the sale, in the present case, Johnson was "just sitting there." Tr. 130. The state did not identify a single overt act made by Johnson to support its theory that she aided and abetted a crime.

{¶23} Further, in spite of the testimony that established that some drug dealers divide the labor so that one holds the money and the other holds the drugs, there was no evidence that tended to show that this was the arrangement in the instant case. "Mere possession of money does not constitute prima facie evidence of criminal purpose * * *." *Whyte*, 1992 Ohio App. LEXIS 343 at *14 (discussing R.C. 2923.24). No drugs or marked buy money were found on Johnson. The witnesses observed only one drug

transaction: that transaction involved only Wiley and Sanders, and the proceeds from that transaction were found on Wiley. The state provided no direct or circumstantial evidence whatsoever to support its theory that Johnson was the bank. Speculations are not evidence. To the contrary, the fact that Johnson was sitting right next to Wylie cuts against the state's testimony that the purpose of a bank is to keep distance between the drug transaction and the proceeds from that transaction.

{¶24} The state attempts to link the money found on Johnson with the drug transactions that Wiley made when she was alone on her bicycle earlier that day. But the uncontroverted testimony established that Wiley left for several hours before returning in the car with Johnson. Thus, there is no logical nexus between the money found on Johnson that evening and the drug transactions that Wiley made several hours earlier. The state's case against Johnson was erected on a foundation of mere suspicion, from which it built inference upon inference upon inference. Such a precarious structure cannot support a conviction.

{¶25} Viewing all the facts in a light most favorable to the prosecution, reasonable minds could only reach the conclusion that the evidence failed to establish beyond a reasonable doubt that Johnson aided and abetted Wiley in selling crack cocaine to Sanders. Rather, Johnson was merely present during the commission of the crime. Accordingly, the trial court erred in denying Johnson's Crim.R. 29 motion, and we reverse and vacate Johnson's conviction under 2925.03(A)(1).[1]

---

[1]The trial court's rationale for denying the motion is difficult to fathom.

## *Drug Possession*

**{¶26}** According to Johnson, the state failed to present sufficient evidence that she had constructive possession of the crack cocaine that was found on Wiley's person. We agree. Johnson was convicted of drug possession under R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance * * *." R.C. 2925.01(K) defines "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession of an object may be actual or constructive. *State v. Smith*, 92 Ohio App.3d 172, 175, 634 N.E.2d 659 (8th Dist.1993). Constructive possession requires that the defendant is able to exercise dominion or control over the object, and may be proved by circumstantial evidence. *State v. Perry*, 8th Dist. No. 84397, 2005-Ohio-27, ¶ 70.

**{¶27}** The state argues that Johnson constructively possessed the crack cocaine that was recovered from Wiley's front waistband. According to the state, because Johnson was sitting next to Wiley in the front seat of the car, with only a console between them, Johnson exercised dominion and control over the crack cocaine. But on the facts of this case, Johnson could exercise dominion and control over the crack cocaine only if she were to reach over the console, put her hand down Wiley's pants, and extract the crack cocaine from Wiley's pants.[2] We decline the state's invitation to expand the

---

[2]This would also require us to assume that Wiley would not physically prevent Johnson from violating her personal space in this manner.

definition of constructive possession to include such a scenario. *See also Whyte*, 1992 Ohio App. LEXIS 343, at *10-11 (state presented insufficient evidence that the passenger possessed drugs that were found in a coat sitting on the driver's lap).

{¶28} The state also argues that Johnson had dominion and control over the drugs based on the fact that the car belonged to Johnson. But the drugs were not found in Johnson's car; they were found on Wiley's person, in the front waistband of her pants. Accordingly, the state's position is unsupported by the record evidence. Because the evidence presented by the state did not establish beyond a reasonable doubt that Johnson possessed crack cocaine, the trial court erred in denying her Crim.R. 29 motion. Accordingly, we reverse and vacate Johnson's conviction under R.C. 2925.11(A).

### *Firearm Specification*

{¶29} Having determined that there was insufficient evidence to support Johnson's convictions for drug trafficking and drug possession, we easily conclude that there was insufficient evidence to support the one-year firearm specification attaching to both of those offenses. R.C. 2941.141(A) provides that the one-year firearm specification applies when "the offender had a firearm on or about h[er] person or under h[er] control *while committing the offense*." (Emphasis added.) As set forth above, the state did not meet its burden to show that Johnson committed the offenses, and so R.C. 2941.141(A) is inapplicable. Accordingly, we reverse the one-year firearm specifications.

### *Possession of Criminal Tools*

**{¶30}** Finally, we conclude that the evidence presented at trial was insufficient to support Johnson's conviction for possession of criminal tools. According to the indictment, the criminal tools consisted of money, the firearm found in Wiley's pants, and the cell phone. In order to convict Johnson of possession of criminal tools under R.C. 2923.24(A), the state had to demonstrate that Johnson possessed or had under her control the money, the firearm, and/or the cell phone, with the purpose to use any or all of these items in a criminal manner.

**{¶31}** In our discussion about drug possession under R.C. 2925.11(A), we explained our reasons for concluding that Johnson did not possess the crack cocaine that was recovered from the front of Wiley's pants. For the very same reasons, we conclude that Johnson did not possess the firearm that was similarly found in the back of Wiley's pants.

**{¶32}** While the state did establish that Johnson possessed money and a cell phone, it did not establish beyond a reasonable doubt that she possessed these items with the purpose to use them criminally. In our discussion about drug trafficking under R.C. 2925.03(A)(1), we concluded that the evidence failed to demonstrate that the money found on Johnson's person was connected to the sale of drugs. Applying this same reasoning to Johnson's conviction for possessing criminal tools under R.C. 2923.24(A), we conclude that the state failed to establish that the money recovered from Johnson was possessed with the purpose to use it criminally.

**{¶33}** Turning to the cell phone, Johnson's mere possession of the phone, without more, does not establish that she possessed it with the purpose to use it criminally. The state presented no evidence whatsoever tending to show that the cell phone was used in furtherance of a crime or that Johnson intended to use the cell phone in the furtherance of a crime. On appeal, the state makes no argument with respect to the cell phone. Because the state did not present sufficient evidence that Johnson was in possession of criminal tools, the trial court erred in denying her Crim.R. 29 motion, and we reverse and vacate Johnson's conviction under R.C. 2923.24(A).

**{¶34}** The trial court's judgment is reversed and upon remand the convictions shall be vacated. The forfeiture orders are reversed and on remand shall be vacated.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

MARY J. BOYLE, P.J., and
MARY EILEEN KILBANE, J., CONCUR