The STATE of Ohio, Appellee,

v.

SLADE, Appellant.

[Cite as *State v. Slade* (2001), 145 Ohio App.3d 241.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 78604.

Decided Aug. 13, 2001.

*William D. Mason,* Cuyahoga County Prosecuting Attorney, and *Kristine R. Travaglini,* Assistant Prosecuting Attorney, for appellee.

*John B. Gibbons,* for appellant.

---

COLLEEN CONWAY COONEY, Judge.

Defendant-appellant Lashawn Slade appeals from her conviction for possession of drugs. She claims that her conviction is against the manifest weight of the evidence and supported by insufficient evidence because there was no evidence that she constructively possessed the drugs. For the reasons set forth below, this appeal has merit and the defendant's conviction is vacated.

Slade was indicted on two counts: possession of marijuana (R.C. 2925.11) and preparation of drugs for sale or shipment (R.C. 2925.07). She waived her right to a jury trial and the matter proceeded before the bench.

Detective Cuda was the only witness to testify. He testified that on October 7, 1999, he and his partner, Detective Follmer, arranged a controlled buy using a confidential informant. The informant purchased a bag of marijuana from Steven Williams. After the informant purchased the marijuana, Steven Williams then left the house and went to another location to get more marijuana.

Prior to and after this purchase, the detectives set up surveillance of the house and observed a lot of pedestrian traffic in and out of the house. The individuals would stay for a short period of time and leave.

On October 22, 1999, the officers executed a search warrant with a SWAT team. The house was described as being one large house with numerous rooms. The detective initially testified that Slade, Steven Williams, and a four-year-old boy were all found in the kitchen. However, he later clarified that he did not know where Slade was located when the warrant was executed, just that she was in the house.

The search of the home revealed one pound of marijuana in plain view on the desk, and near the desk was a bag from the Foot Locker store containing three pounds of marijuana. The Foot Locker bag was the same bag that the detective saw Steven Williams carry into the house. Under the desk, the detectives also found freezer bags with marijuana residue, and a jar of marijuana was found in the office closet. Pictures of Slade and Steven Williams were also found in the office along with some personal papers of Williams.

On cross-examination, the detective admitted that the utility bills indicated that several other people lived at the address. Apparently the house had three

upstairs suites with the tenants paying their own utilities. The kitchen was a common area they all shared.

The detective also admitted that prior to the search of the home there was no evidence that Slade was trafficking or possessed marijuana. A search of her purse revealed no drugs. The detective also stated that he could not testify to Slade's proximity to the drugs. He only knew that she was in the house at the time of the search.

On redirect, the state presented evidence that Slade lived at the premises because she used that address on her driver's license.

The trial court found Slade guilty of possession of drugs but not guilty of preparation of drugs for sale. The trial court sentenced her to community control sanctions.

Slade timely appeals and assigns two assignments of error:

"I. The appellant's conviction is against the manifest weight of the evidence.

"II. The trial court erred in denying appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure."

Slade argues that there was no evidence that she possessed the marijuana found on the premises and that she was merely present when the search warrant was executed. These assignments of error have merit.

A review of the record reveals that Slade did not have drugs on her person; therefore, the state had to present evidence that she constructively possessed the marijuana. "Possession" is defined in R.C. 2925.01(K) as follows:

" 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

Constructive possession is established when the accused was able to exercise dominion or control over the contraband. *State v. Wolery* (1976), 46 Ohio St.2d 316, 322, 75 O.O.2d 366, 370, 348 N.E.2d 351, 356–357. Furthermore, "readily usable drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession." *State v. Scalf* (1998), 126 Ohio App.3d 614, 620, 710 N.E.2d 1206, 1210.

In the instant case, there was no evidence that Slade "exercised dominion or control" over the marijuana. There was absolutely no evidence that she was involved with the drugs, but all the evidence pointed to her boyfriend as the drug dealer. As the Ohio Supreme Court held in *State v. Haynes* (1971), 25 Ohio St.2d 264, 270, 54 O.O.2d 379, 382, 267 N.E.2d 787, 791:

"When narcotics are discovered in the general living area of jointly occupied premises, one can only speculate as to which of the joint occupiers have possession of the narcotics. In other words, no inference of guilt in relation to any specific tenant may be drawn from the mere fact of the presence of narcotics on the premises."

Along with Slade and her boyfriend, two other people lived at the home. According to the detective, there were no locks on any of the doors, so the house appeared completely accessible to all who lived there.

The record reveals no connection between Slade and the drugs except her mere presence in a multi-dwelling home where drugs were openly displayed in a back room used as an office. There was no evidence presented that any of Slade's personal belongings were in the office. No drugs or drug paraphernalia were found on her person or in her purse. There was not even any evidence that she was in close proximity to the drugs. The officer did not know Slade's whereabouts when the search warrant was first executed; however, when he saw her later, Slade was not in the office but was in the kitchen.

Furthermore, all the evidence gained from the surveillance of the home indicated that Steven Williams was the person involved with dealing the drugs, and he was the only person listed in the search warrant. The controlled drug buy was made from Williams, and there was no evidence presented that Slade was present during the controlled buy. Williams's bag from the Foot Locker, which the officer observed him carrying from the drug storage house, was also found in the office filled with marijuana.

For the foregoing reasons, there was insufficient evidence of Slade's constructive possession, and therefore we sustain her assignments of error and vacate her conviction.

*Judgment reversed.*

KENNETH A. ROCCO, P.J., concurs.

MICHAEL J. CORRIGAN, J., dissents.

MICHAEL J. CORRIGAN, Judge, dissenting.

I would find that the state presented sufficient evidence to prove the possession charge and would affirm the court's judgment of conviction.

Viewing the evidence most favorably to sustaining the conviction shows that defendant lived in a house with Steven Williams and was the mother of his son.

The police received a number of complaints about drug dealing from the house. After obtaining a search warrant, the police noted a high volume of foot and vehicular traffic going in and out of the house. When the police entered the house to execute the search warrant, they found approximately four pounds of marijuana in a first-floor room used as an office. One pound of the marijuana was lying on a desk and kept in a clear, plastic bag. Only three people were present in the house at the time: Williams, defendant, and their four-year-old child.

"Possession" is defined in R.C. 2925.01(K) as "having control over a thing or substance." Possession need not be actual; constructive possession may be inferred when a person is conscious of the presence of the object and able to exercise dominion and control over it, even if the object is not within the person's immediate physical possession. See *State v. Hankerson* (1982), 70 Ohio St.2d 87, 24 O.O.3d 155, 434 N.E.2d 1362, syllabus.

In *State v. Scalf* (1998), 126 Ohio App.3d 614, 619, 710 N.E.2d 1206, 1210, we held that "possession may be established where the defendant occupies the premises with others but the drugs are found in the defendant's living area and in plain view throughout the apartment." There is no question that the office was part of the "living area" of the house, since defendant had obvious access to that room, as well as all others on the first floor of the house. The marijuana was in plain view, having been kept in a clear bag that easily revealed its contents. The house had undeniably been used for some time to traffick the marijuana, given the foot and vehicular traffic going in and out of the house and the informant's obviously reliable information to that effect.

The trial judge could find that these facts constituted sufficient circumstantial evidence to support a conviction for defendant's possession of marijuana. I would affirm the conviction.