[Cite as *State v. Johnson*, 2013-Ohio-575.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98245**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## PAUL JOHNSON

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-550775

**BEFORE:** Rocco, J., S. Gallagher, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** February 21, 2013

**ATTORNEYS FOR APPELLANT**

Larry W. Zukerman
S. Michael Lear
Brian A. Murray
Zukerman, Daiker & Lear
3912 Prospect Ave., East
Cleveland, Ohio   44115

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By:    T. Allan Regas
        Mollie Ann Murphy
Assistant Prosecuting Attorneys
1200 Ontario Street
Cleveland, Ohio   44113

KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant Paul Johnson ("Johnson") appeals from his convictions for two fifth-degree felonies: drug possession and possessing criminal tools. On appeal, Johnson argues that the trial court erred in denying his motions to suppress and his motions for acquittal; that the convictions were against the manifest weight of the evidence; and that the trial court erred in sentencing Johnson to two eleven-month sentences to run consecutively. For the reasons that follow, we reverse the trial court's final judgment, and we remand the case to the trial court with instructions to vacate the convictions.

{¶2} In March 2011, Devito Parker ("Parker") was arrested by Sgt. Hicks of the Narcotics Unit of the East Cleveland Police Department. Parker was arrested for trafficking cocaine and crack cocaine. At that time, Parker provided Sgt. Hicks with the name of his supplier, "Big P," which is allegedly Johnson's nickname. As a result of this information, Sgt. Hicks began surveillance on Johnson's residence in Garfield Heights, Ohio. Between March 4, 2011, and May 19, 2011, Sgt. Hicks did not observe any activity or gather any evidence that supported Parker's claims that Johnson trafficked in drugs.

{¶3} On May 19, 2011, Parker filed a report with the East Cleveland Police Department, alleging that Parker and Johnson had exchanged harsh words at a red light and that when the light turned green, Johnson followed Parker, brandished a firearm, and

fired shots at Parker's car. Parker alleged that the source of the animosity was that Parker owed Johnson money for a drug debt.

{¶4} Sgt. Hicks submitted an affidavit and obtained a search warrant authorizing him to search Johnson's home for a silver/chrome firearm and any and all instrumentalities pertaining to a violation of R.C. Chapter 2903 (homicide and assault offenses). The warrant was executed on May 25, 2011, and was supervised by Sgt. Hicks. No firearms were found. Law enforcement seized $7,000 in cash, a black Century safe with a trace (non-weighable) amount of cocaine residue, Johnson's mail, a glass containing nine live rounds of 9 mm ammunition, an empty Ruger gun box, an empty scale box, two bottles containing a white substance, a box of small glass jars, and a razor blade.

{¶5} Johnson was indicted on nine counts: two counts of felonious assault, one count of discharging a firearm on or near prohibited premises, two counts of improper handling of a firearm while in a motor vehicle, one count of having weapons under a disability, one count of criminal damaging or endangering, one count of drug possession, and one count of possessing criminal tools.

{¶6} Johnson filed motions to suppress the evidence seized at his home. After conducting a hearing, the trial court denied Johnson's motions to suppress. The case proceeded to a jury trial. The jury acquitted Johnson of all charges except for drug possession and possession of criminal tools, both fifth-degree felonies.

**{¶7}** On April 15, 2012, the trial court sentenced Johnson to a prison sentence of 11 months on each of his two convictions, and ordered that the sentences run consecutively, for a total of 22 months at the Lorain Correctional Institution.

**{¶8}** On April 18, 2012, Johnson filed a notice of appeal with this court. On April 23, 2012, Johnson filed with this court an application for release on bail and for suspension of execution of sentence after judgment of conviction and pending appeal. Johnson's application was based on the belief that the trial court erred in failing to impose a sentence of community control sanctions pursuant to R.C. 2929.13(B). We ultimately granted Johnson's motion and set Johnson's bond at $20,000, 10 percent cash or surety. On July 3, 2012, we ordered Johnson to be returned to the Cuyahoga County Jail for the purpose of enabling Johnson to sign his bail release paperwork.

**{¶9}** Johnson's notice of appeal presents five assignments of error for review.

I. The trial court erred to the prejudice of the Appellant by denying Appellant's motion to suppress as Appellant clearly established that a material, sworn false statement was made by the affiant in the affidavit for the search warrant and that said material false statement was made knowingly, intentionally, and/or with reckless disregard for the truth and, without said false statement, the affidavit's remaining content was insufficient to establish probable cause.

II. The trial court erred in failing to suppress the evidence recovered from the search of the Appellant's residence as the search warrant did not authorize the seizure of such items.

III. The trial court erred as a matter of law and to the prejudice of Appellant by denying Appellant's motions for judgment of acquittal, as to Counts Eight and Nine of the indictment, pursuant to Crim.R. 29(A), in violation of Appellant's right to due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

IV.   The judgments of conviction as to all counts are against the manifest weight of the evidence, in violation of Appellant's right to due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

V.   The Trial Court erred in sentencing the Appellant to two eleven-month sentences of imprisonment and in ordering that said sentences were to run consecutive to each other.

We overrule the first assignment of error; we sustain in part and overrule in part the second assignment of error; we sustain the third assignment of error; we need not address the fourth assignment of error; and we sustain the fifth assignment of error.

{¶10} In his first assignment of error, Johnson argues that the search warrant was invalid and, therefore, the trial court erred in denying the motion to suppress any evidence found pursuant to the warrant.  According to Johnson, Sgt. Hicks made a material false statement and/or recklessly disregarded the truth with regard to the first paragraph of his search warrant affidavit.  We conclude that, even if the first paragraph of the search warrant was stricken from Sgt. Hicks's affidavit, the magistrate could still find probable cause to issue the search warrant.  Accordingly, the trial court did not err in denying Johnson's motion to suppress on this basis.

{¶11} When determining whether to issue a warrant, the magistrate must  "'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *State v. George*, 45 Ohio St.3d 325, 544

N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). On appeal, our duty is "to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at paragraph two of the syllabus. We must "accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.*

{¶12} In this case, Johnson argues that Sgt. Hicks made a knowingly false/reckless statement in the affidavit. In such a case, we apply the following rule:

> "(1) where a defendant made a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in his affidavit for a search warrant, and if the alleged false statement was necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request so that he might challenge the truthfulness of factual statements made in the affidavit[,] and (2) if at such a hearing the defendant established by a preponderance of the evidence the allegation of perjury or reckless disregard, and, *with the affidavit's false material to one side, the affidavit's remaining content is insufficient to establish probable cause*, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause were lacking on the face of the affidavit."

*State v. Parker*, 8th Dist. No. 93835, 2011-Ohio-1059, ¶ 46, quoting *Franks v. Delaware*, 438 U.S. 154, 155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). (Emphasis added.) Under this rule, suppression is not warranted unless the false statement was necessary to the finding of probable cause. To make this determination, the false material is excised, and then the rest of the affidavit's contents are reviewed to determine "whether the affidavit still contains sufficient facts and supporting circumstances to establish probable cause in

the eyes of a detached and neutral magistrate." *State v. Bryant*, 5th Dist. Nos. 10CA019 and 10CA020, 2011-Ohio-3353, ¶ 33.

{**¶13**} Sgt. Hicks's affidavit stated in pertinent part:

1. Affiant avers that on May 19, 2011, members of the East Cleveland Police Department responded to the area Phillips Dr. and Bender Ave. to a report of shots fired. Affiant states that officers were informed that a male was shooting from his vehicle at another vehicle. Affiant states that by the time officers arrived the vehicles were gone.
2. Affiant states that on the same day Devito Parker arrived at the police department and informed officers that a male named Paul Johnson chased him in a vehicle and shot at him multiple times. Parker informed that his son Devito Parker Jr. was also in the vehicle at the time. Parker informed that his vehicle was hit twice, with one bullet penetrating the car. Parker informed that Johnson was driving a red Dodge Charger. Parker stated that Johnson shot at him with a chrome firearm.

At the suppression hearing Sgt. Hicks testified that he had learned about the alleged shooting from another officer. When Sgt. Hicks drafted the affidavit he believed that someone had called 9-1-1 and had reported the shooting independent of Parker coming to the station to report that shooting. In reality, the only person who reported the shooting was Parker himself.

{**¶14**} Johnson argues that the first paragraph of the affidavit gives the false impression that an independent source reported the crime, prior to Parker coming into the station to report the shooting. Johnson argues that Sgt. Hicks knew paragraph one was false or was at least reckless in setting forth paragraph one, because simple investigatory measures would have revealed that no one but Parker had reported the shooting. The argument continues that because Parker has a criminal record and because Parker

allegedly owed Johnson approximately $10,000, Parker was not credible and thus, his allegations, standing alone, were not enough to establish probable cause.

{¶15} At the conclusion of the suppression hearing, the trial court determined that the affidavit contained "no material false statements," that "everything in [the affidavit] is true," and that "whatever is implied by paragraph one or two doesn't matter." (Tr. 162.) The trial court also determined that there was no requirement that when a known witness reports a crime "there has to be [a] credibility check or some other factors provided to the neutral magistrate with respect to their credibility * * * other than what's * * * corroborated by the statements, through physical evidence identified by police officers of bullet holes in the car * * *." (Tr. at 162-163.)

{¶16} While we express concern as to the investigatory mistakes made leading up to securing the warrant, we need not decide whether Sgt. Hicks's conduct rose to the level of a reckless disregard for the truth. Even if paragraph one is stricken from the affidavit, the rest of the affidavit still established the probable cause necessary to issue a search warrant.

{¶17} While it is true that the only person who alleged that Johnson had shot at Parker's car was Parker himself, and while it is true that Parker has a criminal background and allegedly had a history with Johnson, we know of no rule requiring independent corroboration of a witness when that witness has a criminal background and is not providing an anonymous tip. We agree with the trial court that, to the extent that

Parker's credibility needed corroboration, the rest of the affidavit established the necessary corroboration, independent of paragraph one of the affidavit.

{¶18} When paragraph one is stricken, the affidavit still provides the following information: Parker came into the station and reported that Johnson had shot at him and his son while they were in their car; Parker alleged that one of the two bullets penetrated his car; Parker alleged that he owed Johnson drug money; Parker had a criminal background; Johnson had a criminal background, including an arrest for carrying a concealed weapon; and Parker positively identified Johnson in a photo array as the individual who shot at him. These statements, taken together, provided enough information to establish probable cause that the gun used in the alleged attack might be found in Johnson's home.

{¶19} Even if paragraph one is excised, we conclude that the affidavit still contains sufficient facts and supporting circumstances to establish probable cause in the eyes of a detached and neutral magistrate. Johnson's first assignment of error is, therefore, overruled.

{¶20} In his second assignment of error, Johnson argues that the trial court erred in failing to suppress the evidence recovered from the search of Johnson's residence, because the warrant did not authorize the seizure of those items. The warrant authorized a search for only a "[c]hrome or silver firearm and any and all evidence pertaining to the violation of the laws of the state of Ohio, to wit: Chapter 2903." Chapter 2903 pertains to homicide and assault.

{¶21} Johnson argues that the officers who conducted the search seized a number of items bearing no relationship to a firearm or to a crime under Chapter 2903. According to Johnson, these items should have been suppressed, and the trial court erred in failing to grant his motion to suppress. The state argues that the items were lawfully seized either because they were authorized under the warrant or because they were found in plain view. We conclude that the currency and the mail should have been suppressed, but that the trial court did not err in denying the suppression motion regarding the other seized items.

{¶22} Under the plain-view doctrine, if evidence is not specifically described in a warrant, it may still be lawfully seized if the intrusion is lawful, the discovery of the evidence is inadvertent, and the incriminating nature of the item is immediately apparent. *State v. Williams*, 55 Ohio St.2d 82, 377 N.E.2d 1013 (1978), paragraph one of the syllabus; *State v. Jimenez*, 8th Dist. No. 95337, 2011-Ohio-1572, ¶ 8.

{¶23} Johnson argues that there is no logical relationship between the firearm and the following items that were seized: $7,000 in cash, Johnson's mail, a glass with nine live rounds of 9 mm ammunition, an empty Ruger gun box, a black Century safe with a non-weighable amount of cocaine residue, an empty scale box, two bottles containing a white substance, a box of small glass bottles, and a razor blade. Any item seized should have been suppressed if the item was not specifically named in the warrant, or, if the item

was found in plain view, if the incriminating nature of the object was not immediately apparent.[1]

**{¶24}** Det. Mark Allen testified that he found the currency inside of the living room couch cushions and that he found the mail for Johnson in the mailbox. Det. Allen stated that he did not have the "legal expertise" to offer a coherent explanation as to why a search warrant limiting the search of a house for a firearm authorized him to seize the cash. (Tr. 71.) Det. Allen also testified that he could not explain why he seized the mail.

**{¶25}** The trial court reasoned that the money was legally seized because there was evidence of a drug debt, and that once the drug residue was found in the safe, the police had the right to seize other items that would be consistent with evidence of drug trafficking or drug use, which would include the currency. The trial court made no specific finding regarding the mail, but its global decision to deny the motion to suppress meant that the mail was not suppressed. We conclude that the $7,000 and the mail should have been suppressed, because they were not named in the warrant and because the incriminating nature of the money and the mail was not immediately apparent.

**{¶26}** In *State v. Vipperman*, 5th Dist. Nos. CA-842 and CA-843, 1997 Ohio App. LEXIS 5353 (Nov. 10, 1997), the Fifth District affirmed an order suppressing evidence on the grounds that the items seized from the defendants' residence were not described in

---

[1]We have already determined that the intrusion was lawful, because the warrant was valid. The parties do not argue about whether the items were discovered inadvertently.

the search warrant. The officers were searching for two stolen freezers. The warrant authorized the officers to seize any controlled substances and related property, and the two stolen freezers. During the execution of the warrant, the officers did not find the stolen freezers described in the warrant, but found and seized another freezer, as well as a floor lamp, a barbeque grill, two chairs, pillows, and a blanket.

{¶27} In determining that the items should be suppressed, the court rejected the arguments that the items were closely related to the crime being investigated and that the officers had reason to believe that the items seized were instrumentalities of the crime. Rather, the court reasoned that the items were common household items, not contraband, and that there was no evidence to suggest that it was apparent to the officers who seized the items that they were closely related to the crime being investigated. The fact that the seized items were later determined to be evidence of a different robbery did not impact the court's decision.

{¶28} In the instant case, the state makes no argument in its brief about whether the incriminating nature of the money or mail was immediately apparent. Although the trial court found that the money was subject to seizure because it was consistent with drug trafficking or drug use, we conclude that this connection is too tenuous and that it was not immediately apparent that the money was related to criminal activity.

{¶29} Similar to the items seized in *Vipperman*, money and mail are common, everyday items, and are not inherently contraband. There is no evidence in the record suggesting that it was apparent to the officers who seized the items that these items were

closely related to the crime being investigated, assault with a firearm. When asked why he would seize the money and what it had to do with the crime being investigated, Det. Allen stated that he did not have an explanation.

{¶30} There are numerous, non-criminal explanations for why money was found in the house, and, therefore, at the time that it was seized, the incriminating nature of the money was not immediately apparent. No one at the trial level or on appeal has provided an argument as to how the incriminating nature of the mail was immediately apparent, and we can find none ourselves. For the foregoing reasons, the officers did not have the authority to seize the currency or the mail, and the trial court erred in denying Johnson's motion to suppress regarding these items.

{¶31} We need not determine whether the razor blade was subject to suppression, because it was never admitted at trial. Although it appeared on an inventory list that was admitted at trial as an exhibit, the trial transcript reveals that the razor blade was redacted from the inventory sheet, and so the jury did not consider it in rendering its verdict.

{¶32} We conclude that the trial court did not err in denying the motion to suppress with respect to the remaining items, because these items were either authorized under the warrant or because the incriminating nature of the items was immediately apparent. The bullets and the empty gun box were admissible because they were authorized under the warrant, as bullets and an empty gun box could logically pertain to a violation under Chapter 2903 for a felonious assault involving a firearm.

{¶33} The remaining items were admissible because they were found in plain view and the incriminating nature of the items was immediately apparent. The safe was initially examined because it could have contained a gun. Upon opening the safe, Det. Hicks testified that it contained a white powder that he believed to be cocaine. Once evidence of a drug-related crime had been uncovered, law enforcement was authorized to seize related items if the incriminating nature of those items was immediately apparent. While we ultimately conclude that there was insufficient evidence to sustain the conviction for drug possession, we agree with the trial court that the safe was lawfully seized at the time that the search was conducted.

{¶34} Det. Eric Jones, a member of the narcotics division, testified that while searching the basement, he found an empty scale box, two bottles containing an unknown, white substance, and a box containing empty glass bottles. According to Det. Jones, "Blue Fish" and "Super Lactose" appeared on the labels of the two bottles with the unknown, white substance. Det. Jones stated that based on his experience and training, the white substance found in the bottles could be used as a cutting agent to stretch out drugs such as cocaine. Det. Jones testified that the glass jars could be used to store PCP or crack. There was no direct testimony as to why the empty scale box was seized, but the testimony surrounding the empty scale box implies that it was seized because a scale could be used to weigh drugs.

{¶35} While we ultimately conclude that these items, standing alone, do not create sufficient evidence to sustain a conviction for possession of criminal tools, we agree with

the trial court that, at the time of the search, the items were lawfully seized. For the aforementioned reasons, we sustain in part and overrule in part the second assignment of error.

{¶36} In his third assignment of error Johnson argues that the trial court erred in denying his motions for acquittal, under Crim.R. 29(A), for violating R.C. 2925.11(A) ("no person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog") and R.C. 2923.24(A) ("no person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally"). We agree with Johnson that there was insufficient evidence to sustain convictions for either charge, and so we sustain the third assignment of error.

{¶37} Under Crim.R. 29, a motion for judgment of acquittal should be granted if the evidence is insufficient to sustain a conviction for the offense. Viewing all the facts in a light most favorable to the prosecution, we will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

### *Drug Possession*

{¶38} According to Johnson, the state failed to present sufficient evidence that Johnson had constructive possession of the trace amount of cocaine residue found inside the safe. Johnson also argues that the state failed to offer sufficient evidence that he had knowledge of the cocaine residue found inside the safe. We agree.

{¶39} Johnson was convicted for drug possession. R.C. 2925.01(K) defines "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession of an object may be either actual or constructive. *State v. Smith*, 92 Ohio App.3d 172, 175, 634 N.E.2d 659 (8th Dist. 1993). Constructive possession requires that the defendant is able to exercise dominion or control over the object, and may be proved by circumstantial evidence. *State v. Perry*, 8th Dist. No. 84397, 2005-Ohio-27, ¶ 70.

{¶40} In *State v. Slade*, 145 Ohio App.3d 241, 762 N.E.2d 451 (8th Dist. 2001), we found that there was insufficient evidence to sustain a drug possession conviction where there was no connection between the defendant and the drugs except for the defendant's presence in the house. The house was a multi-dwelling home and the drugs were openly displayed in a back room used as an office. Although the defendant was in the house when the drugs were found, there was no evidence presented that any of the defendant's personal belongings were in the office, except that there were photographs of the defendant found in the office. No drugs or drug paraphernalia were found on the defendant's person or in her purse. Further, there was no evidence that she was in close proximity to the drugs.

{¶41} In contrast, in *State v. Powell*, 8th Dist. No. 82054, 2003-Ohio-4936, the evidence presented was sufficient for a jury to find that the defendant constructively possessed cocaine, even though he was not present when the residence was searched. In

the bedroom, detectives found several baggies of cocaine and evidence of cocaine on the window sill. In the kitchen of the residence, they found several pieces of crack cocaine, a digital scale, a utility knife containing cocaine residue, and a bowl containing a piece of crack cocaine. The drugs were found in plain view in the kitchen and the bedroom. The defendant's girlfriend told police that the defendant had been there an hour earlier. A confidential informant testified that he had purchased cocaine from a man inside the home, and the police, during surveillance, never saw any other male besides the defendant enter or leave the home. The defendant argued that the evidence could not exclude the possibility that the drugs belonged to someone else. We held that the state was not required to eliminate all possibilities regarding interpretation of the evidence, and that the evidence presented, if believed, was sufficient for a guilty verdict. *Id.* at ¶ 15.

{¶42} The facts of the case at bar fall somewhere between *Slade* and *Powell*. Unlike *Powell* where there was independent testimony that drug activity was taking place inside the home, in the instant case, police officers had been conducting surveillance on Johnson's home for drug-related activity for several months, but had not observed any evidence of drug activity. On the other hand, in contrast to *Slade*, Johnson's was a single-family home and the only other residents of the house were his wife and child.

{¶43} In deciding that this case is closer to *Slade* than to *Powell*, we are mindful of the language in R.C. 2925.01(K) stating that constructive possession "may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Here the state appears to rest its

case for constructive possession merely on the fact that the non-weighable cocaine residue was found in a safe that was found on the same premises that Johnson occupied.

**{¶44}** Johnson's fingerprints were not found on the safe. *See State v. Swalley*, 11th Dist. No. 2010-A-0008, 2011-Ohio-2092 (finding insufficient evidence for a drug possession conviction and noting that none of the items confiscated were tested for fingerprints). The safe was found in the basement of the house, under a pile of clutter. Det. Allen testified that he rummaged through the clutter for about fifteen minutes before coming upon the safe. Another adult resided in the house who also had access to the basement. Johnson was nowhere near the safe when it was found, there was no evidence that he had recently been in the basement, and there was no evidence presented to indicate that the safe belonged to Johnson. Accordingly, the state failed to present sufficient evidence that Johnson constructively possessed the cocaine residue found at the bottom of the safe.

**{¶45}** Further, Johnson argues that the state did not provide sufficient evidence of mens rea. We agree. In order to sustain a conviction for possession under R.C. 2925.11(A), the state must prove that the defendant acted "knowingly." Although the Ohio Supreme Court has held that "the quantity of a controlled substance is not a factor in determining whether a defendant may lawfully be convicted of drug abuse, in violation of R.C. 2925.11(A)," it also held that "whether a person charged with drug abuse in violation of R.C. 2925.11 knowingly possessed, obtained, or used a controlled substance

is to be determined from all the attendant facts and circumstances available." *State v. Teamer*, 82 Ohio St.3d 490, 491-492, 696 N.E.2d 1049 (1998).

**{¶46}** The state argues that *Teamer* stands for the proposition that the amount of contraband is irrelevant. We conclude that *Teamer* stands for the proposition that the amount of contraband is not dispositive, but that the amount of contraband may still be a relevant factor in determining whether a defendant knowingly possessed drugs. The *Teamer* decision concluded that "[a]s long as there is scientifically accepted testimony from which a factfinder could conclude beyond a reasonable doubt that a controlled substance was present, a conviction for drug abuse pursuant to R.C. 2925.11(A) will not be reversed *based* on the amount of contraband involved." *Id.* at 492. (Emphasis added.) While a conviction will not be reversed based only on the amount of contraband, the *Teamer* decision does not hold that the amount is irrelevant.

**{¶47}** In the instant case, the amount of cocaine found was non-weighable residue. Under *Teamer*, although the amount of cocaine is not dispositive as to whether Johnson had knowledge, it is relevant, as knowledge is to be determined from *all* the attendant facts and circumstances. The fact that the residue was such a minuscule amount that it was not weighable and the fact that it was found in a safe, under a pile of clothes in the basement, undermines the state's claim that Johnson knowingly possessed the residue.

**{¶48}** Unlike in *Teamer*, where the officers observed the defendant dropping a crack pipe from his hand that later tested positive for drug residue, here the drug residue was found nowhere near Johnson's person. Nor was there any evidence that Johnson had

recently been in the basement of the premises, that he owned the safe, or that he had ever touched the safe. The additional attendant facts and circumstances presented by the state, if believed, were not enough to establish that Johnson had the requisite knowledge for a drug possession conviction. Reasonable minds could only reach the conclusion that the evidence failed to prove all elements of the crime of drug possession beyond a reasonable doubt. Accordingly, we must reverse the conviction.

*Possession of Criminal Tools*

{¶49} We, likewise, conclude that the evidence presented at trial was insufficient to support Johnson's conviction for possession of criminal tools. Under R.C. 2923.24(A) "no person shall possess or have under the person's control any substance, device, instrument, or article with purpose to use it criminally." According to the state's brief, the following evidence supported the conviction for possession of criminal tools: 1) money; 2) a scale; 3) empty glass bottles that Det. Jones testified could be used to place PCP or crack; and 4) two bottles of a white substance that Det. Jones testified could be used to cut cocaine. State's Br. at 22. The state argues that Johnson's purpose in possessing these items was to commit the crime of felony drug trafficking.

{¶50} First, as discussed under the second assignment of error, the money should have been suppressed and so it cannot be considered as evidence. Second, contrary to the state's position, law enforcement did not discover a scale in Johnson's house. Rather, they discovered an empty box for a scale. The box itself cannot be considered a

criminal tool, because we cannot imagine a situation where Johnson could have possessed an empty box with an intent to use it criminally. *See* R.C. 2923.24(A).

{¶51} Excluding the money and the empty box, we are left with empty glass bottles and two bottles of a white substance with the labels "Super Lactose" and "Blue Fish." As with the empty box, these items were also found in the basement. We have the same concerns with the evidence presented for this charge as we have with the evidence that was presented for the drug possession charge: the state's evidence does not establish that Johnson constructively possessed these alleged criminal tools.

{¶52} Det. Jones could not recall where in the basement he found the glass bottles and the two bottles of the white substance and he could not recall whether the items were part of the clutter in the basement. No photographs were taken. There is no evidence that Johnson's fingerprints were found on the items. Another adult resided in the house who also had access to the basement. Johnson was nowhere near these items when they were found, there was no evidence that he had recently been in the basement, and there was no evidence presented to indicate that the items belonged to Johnson.

{¶53} Further, although Det. Jones testified that the glass bottles could be used to store PCP or crack, no PCP or crack was recovered from the house. This undermines the state's position that the glass bottles were possessed with the purpose to commit the crime of drug trafficking. For the aforementioned reasons, we conclude that reasonable minds could only reach the conclusion that the evidence failed to prove all elements of the crime

of possession of criminal tools beyond a reasonable doubt. Accordingly, we must reverse the conviction.

**{¶54}** In his fourth assignment of error Johnson argues that his convictions were against the manifest weight of the evidence. Having already determined that there was insufficient evidence to convict Johnson for drug possession or for possession of criminal tools, we decline to address this assignment of error because it is now moot.

**{¶55}** In his fifth assignment of error, Johnson argues that the trial court erred in sentencing him to two eleven-month sentences of imprisonment and in ordering that the sentences were to run consecutive to each other. According to Johnson, the trial court failed to comply with the sentencing requirements under R.C. 2929.13(B)(1), because the trial court was required to impose a sentence of community control sanctions.

**{¶56}** On appeal, we took the unusual step of granting Johnson's application for release on bail and for suspension of execution of sentence after judgment of conviction and pending appeal. Accordingly, Johnson has been out of prison pending the resolution of this appeal, even though he had been sentenced to two eleven-month sentences to run consecutively. We granted Johnson's application after a motion for reconsideration, because we had serious concerns that the sentence imposed might violate R.C. 2929.13(B)(1). In light of these unusual circumstances, we conclude that it is necessary to address this assignment of error, notwithstanding the fact that we are reversing Johnson's convictions in this case. We conclude that the trial court clearly erred in sentencing Johnson to a term of prison, and so we sustain the fifth assignment of error.

**{¶57}** We apply a two-step approach when reviewing felony sentences. First, we examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence so that we can determine whether the sentence is clearly and convincingly contrary to law. If the trial court complies with all applicable rules and statutes, we then review the prison term for an abuse of discretion. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 9-10 (2008).

**{¶58}** When applicable, trial courts are required to comply with the sentencing requirements of R.C. 2929.13. *State v. Ogle*, 8th Dist. No. 97926, 2012-Ohio-3693, ¶ 12. The parties' arguments hinge on competing interpretations of R.C. 2929.13(B)(1). On September 30, 2011, H.B. 86 went into effect.[2] H.B. 86 amended R.C. 2929.13(B)(1) so as to prohibit prison sentences for certain fourth and fifth-degree felonies. *See* R.C. 2929.13(B)(1)(a).

**{¶59}** Under R.C. 2929.13(B)(1)(a):

> Except as provided in division (B)(1)(b) of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence, the court shall sentence the offender to a community control sanction of at least one year's duration if all of the following apply:
> i) The offender previously has not been convicted of or pleaded guilty to a felony offense or to an offense of violence that is a misdemeanor *and that the offender committed within two years prior to the offense for which sentence is being imposed.*
> (ii) The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.
> (iii) If the court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, the department,

---

[2]H.B. 86 applies to the instant case, because it went into effect before Johnson was sentenced. *See State v. Steinfurth*, 8th Dist. No. 97549, 2012-Ohio-3257, ¶ 13-14.

within the forty-five-day period specified in that division, provided the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court.

(Emphasis added.) R.C. 2929.13(B)(1)(a). If all three subsections are satisfied, then the trial court was required to sentence Johnson to community control sanctions and lacked the discretion to sentence Johnson to a term of prison.

{¶60} Although the parties do not dispute that subsections (ii) and (iii) are satisfied in this case, they part company with respect to subsection (i). According to the state, if a defendant has been convicted of or pleaded guilty to a felony offense at any time, then subsection (i) is not satisfied. But the language of subsection (i) requires a felony conviction *and* that the offender committed the felony within two years of the instant sentence. The state's position would have us effectively read the word "and" out of the provision. We hold that R.C. 2929.13(B)(1)(a)(i) is satisfied where a defendant has previously been convicted of or pleaded guilty to a felony offense, but that conviction or guilty plea occurred more than two years before the current sentence is imposed.

{¶61} In the instant case, Johnson had not been convicted of a felony or pleaded guilty to a felony within two years of the sentence being imposed. Therefore, R.C. 2929.13(B)(1)(a)(i) applied. Because there is no dispute that R.C. 2929.13(B)(1)(a)(ii)-(iii) applied, the trial court was required to sentence Johnson to a community control sanction. Accordingly, the trial court committed clear error when it failed to comply with the applicable statute and instead sentenced Johnson to two

eleven-month sentences to run consecutively.    Accordingly, we sustain the fifth assignment of error.

**{¶62}** The trial court's judgment is reversed and remanded.   On remand, the trial court shall vacate Johnson's convictions.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

KATHLEEN A. KEOUGH, J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS
IN PART AND DISSENTS IN PART
(SEE ATTACHED OPINION)

SEAN C. GALLAGHER, P.J., CONCURRING IN PART AND DISSENTING IN PART:

**{¶63}** I concur in part and respectfully dissent in part.

{¶64} I concur with the majority's resolution of the second assignment of error except, unlike the majority, I would find that the money and mail were lawfully seized. The majority holds that seizure of $7,000 cash (that was found in the couch cushions) and mail was beyond the scope of the search warrant and unlawful. The plain-view doctrine "authorizes seizure of illegal or evidentiary items visible to a police officer who has access to the object, has some prior Fourth Amendment justification, and who has probable cause to suspect the item is connected with criminal activity." *See Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983). I would find this test was satisfied in this case.

{¶65} The officers had a search warrant, saw suspected drugs in plain view, and seized items that they had probable cause to believe were related to criminal activity. That would include large amounts of cash and mail addressed to Johnson. Mail is probative of an individual's presence in the residence being searched, which is relevant to proving his or her participation in crimes committed therein. It is well settled that cash is used in furtherance of drug activity. *State v. Gordon,* 8th Dist. No. 97336, 2012-Ohio-4930, ¶ 36 ($12,000 in cash was considered circumstantial evidence supporting a drug conviction where it was found in a hidden compartment of a store that the defendant owned and around which drug activity took place). *State v. Young*, 8th Dist. No. 92744, 2010-Ohio-3402, ¶ 16-20, *discretionary appeal not allowed*, *State v. Young*, 127 Ohio St.3d 1447, 2010-Ohio-5762, 937 N.E.2d 1036, citing *State v. Batin*, 5th

Dist. No. 2004-CA-00128, 2005-Ohio-36, *rev'd on other grounds*, *In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 518, 2006-Ohio-3254, 849 N.E.2d 985.

**{¶66}** Although I find the seizure of the cash and mail was lawful, I note there is a different burden that must be satisfied to warrant forfeiture of it. *E.g.*, *State v. Conway*, 8th Dist. No. 96905, 2012-Ohio-590. The record in this case does not meet that burden, and while forfeiture is not an issue in this appeal, the money would have to be returned. There simply is not a sufficient nexus between the cash seized and the drugs and paraphernalia recovered to warrant forfeiture.

**{¶67}** I respectfully dissent from the majority's decision that finds insufficient evidence to support Johnson's convictions for drug possession and possessing criminal tools. The contraband was seized from his single-family home where he lived with his wife and eight-year-old child. Johnson's mother-in-law had purchased the home for Johnson's family years ago. There is no indication that his wife or child had any involvement in drug activity. There is testimony in the record indicating that Johnson was involved in drug activity, including the sale of cocaine, crack, and crack cocaine. Experienced officers testified that the items seized from Johnson's residence are commonly used in connection with drug activity. Detective Jones testified that the "Blue Fish" and "Super Lactose" bottles "are used as a cutting agent to stretch out drugs, cocaine, crack." A scale box was also seized, and Det. Jones stated that the glass jars and bottles can be used to store PCP or crack. The defense offered innocuous purposes for the items seized, indicating Johnson's wife used a scale to weigh jewelry. It was also

suggested that the vials were discontinued lab supplies from Johnson's wife's family business. Nonetheless, the standard for sufficiency review does not permit the appellate court to weigh the evidence or make credibility determinations. For these reasons, I would not vacate Johnson's convictions on the basis of insufficient evidence.

{¶68} I concur with the majority's determination that the mandatory community control sanction provisions of R.C. 2929.13(B)(1)(a) apply, but I write further to address the identified, and disputed, ambiguity in R.C. 2929.13(B)(1)(a)(i). The state's position is that the phrase in R.C. 2929.13(B)(1)(a)(i) that provides "and that the offender committed within two years prior to the offense for which sentence is being imposed" only applies to prior convictions for violent misdemeanor offenses. The state would have us interpret the statute to disqualify any repeat felony offenders from the mandatory community control sanction provisions regardless of the date of the prior felony conviction. The defense contends the two-year look-back provision applies to prior convictions for both felonies and violent misdemeanors.

{¶69} Admittedly the statutory provision is unclear. However, a main purpose behind H.B. 86 was to reduce Ohio's prison population and R.C. 2901.04(A) requires that the criminal code be "strictly construed against the state, and liberally construed in favor of the accused." Accordingly, the identified ambiguity in R.C. 2929.13(B)(1)(a)(i) must be resolved in the accused's favor, which means the two-year look-back period must be applied to not only the offender's prior convictions for violent misdemeanor offenses but also to his or her prior felony convictions.

**{¶70}** I fully concur with the remainder of the majority opinion.