[Cite as *State v. Hakim*, 2018-Ohio-492.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 105679

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## ABDUL HAKIM

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-608709-A

**BEFORE:** Boyle, J., E.A. Gallagher, A.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 8, 2018

**ATTORNEYS FOR APPELLANT**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Eben McNair
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Mark Stanton
Cuyahoga County Public Defender
BY:   Christopher Maher
         Cullen Sweeney
Assistant Public Defenders
310 Lakeside Avenue, Suite 200
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

{¶1} Plaintiff-appellant, state of Ohio, appeals from a judgment granting defendant-appellee, Abdul Hakim's (a.k.a. Abdul Asmar and Darryl Brown) ("Hakim") motion to suppress drugs and criminal tools found during the execution of a search warrant upon a residence.[1] Specifically, the state argues that the trial court erred because the search and seizure of items beyond those articulated in the search warrant was justified under the plain view or plain smell doctrines outlined in Fourth Amendment jurisprudence. Upon review of the record and relevant law, we affirm the trial court's decision.

## I. Procedural History and Facts

{¶2} In July 2016, police sought and obtained a search warrant to search a home located on Hastings Avenue in East Cleveland. According to the warrant, police were authorized to search the following items:

> Firearms; ammunitions; casings; magazines; holsters; documentation (including ledgers) pertaining to firearms, ammunition, and/or their ownership purchase or sale; documentation and other items relating to the identification of Abdul Hakim ALI EL aka Darryl Brown aka Abdul Asmar and/or any ownership interest in the premises and any and all evidence pertaining to violations of the laws of the State of Ohio, to wit: R.C. 2923.12 and R.C. 2923.13.

{¶3} The next day, agents with the Bureau of Alcohol Tobacco Firearms and Explosives ("ATF"), along with East Cleveland police, executed a search upon the

---

[1]The state's assignment of error is: "The trial court erre[d] in granting defendant's motion to suppress evidence."

property. In doing so, the officers seized a shotgun shell, a Sig Sauer firearm, a magazine, ammunition, a prescription pill bottle with a white powder substance inside, suspected marijuana, two digital scales, sandwich bags, and $2,500 in cash.

{¶4} By indictment filed in September 2016, Hakim was charged with two counts of having weapons while under disability, one count of drug trafficking, one count of drug possession, and one count of possessing criminal tools. Hakim pleaded not guilty at his arraignment and subsequently filed a motion to suppress. He argued that the government failed to establish probable cause to support the issuance of a search warrant for the residence and that, even if the warrant was supported by probable cause, the government exceeded the permissible scope of the warrant when it searched for and seized items not related to the illegal handling of firearms. On March 29, 2017, the court commenced a hearing on the motion to suppress that lasted several days.

## II. Suppression Hearing

{¶5} Arguments at the suppression hearing were bifurcated along with Hakim's two theories for suppression: (1) there was lack of probable cause to issue the warrant, and (2) the government impermissibly exceeded the scope of the warrant.

### A. Probable Cause

{¶6} Defense counsel argued that all evidence found in the course of executing the search warrant should be suppressed because the affidavit in support of the warrant did not establish probable cause. Specifically, counsel claimed that the affidavit did not contain probable cause to believe that Hakim was a resident at the Hastings property or

that firearms would be found there. Counsel also claimed that the search-warrant affidavit usurped the issuing judge's authority by making allegations that Hakim was a "sovereign citizen" and that sovereign citizens were particularly dangerous.

{¶7}   In making these arguments, defense counsel focused on two paragraphs of the search-warrant affidavit.   The first was paragraph 35, which outlined the apparent domicile relationship between Hakim and the owner of the Hastings property.   It noted that Hakim and the owner of the property had a history of living together based on, among other things, a records check that showed that Hakim took out utilities in his name while living with the owner at a different address in 2012.   Defense counsel argued that the 2012 utilities report was the only factual connection that showed a shared domicile and that its relevance was diminished due to the lapse in time and a change in address. Moreover, defense counsel argued that the affidavit implied that the 2012 record of utilities was not the only thing that connected Hakim to the individual living in the Hastings property, but offered no factual basis for the court to draw that conclusion.

{¶8}   The second paragraph at issue, paragraph 36, was one that stated that Hakim was a sovereign citizen and that "sovereign citizens believe they are not subject to law or government rules and are known to acquire and maintain firearms and other weapons."   Defense argued that this paragraph improperly "juiced-up" the search warrant by adding unverified allegations as to how sovereign citizens act.

**B. Scope**

{¶9}   ATF agent, John Remick-Cook, provided the sole testimony regarding the

execution of the search warrant.   His testimony is summarized as follows.

{¶10} On June 14, 2016, Agent Remick-Cook, along with several other ATF agents and local law enforcement officers, executed a search warrant on the Hastings Avenue property.   Hakim was home at the time of the search.   The officers were looking for "firearms and ammunition and documents in support of firearms ownership."

{¶11} During the search, the officers came upon two locked safes in a bedroom closet:   a smaller safe on top of a larger one.   Hakim gave the officers the combinations to open the safes.[2]   They searched the small safe first.   The officers immediately saw and removed a handgun from the smaller of the two safes and continued to remove other items.   One of these items in the small safe was a common, translucent-orange prescription pill bottle with a label on it.

{¶12} Agent Remick-Cook testified that he could not immediately tell what was inside the bottle so he picked it up and began moving it around at "various angles."   He admitted that with the label, the bottle only had "a limited portion in which you can look inside to try to inspect the contents."   During the manipulation of the bottle he saw what appeared to be plastic bags inside.   According to his testimony, this "indicate[d] either narcotics in the pill bottle, or it could have been ammunition wrapped up in a plastic bag so as to keep it from making noise, bouncing off the side of the pill bottle."   The agent

---

[2]Both parties agreed below that police could search the safe pursuant to the warrant and, thus, there was no issue with respect to police searching the safe.

testified that he did not shake the bottle to see what might be inside, but instead opened it and took out its contents. He found a white powder substance inside several plastic bags.

{¶13} The agent further testified that he and the other officers found suspected marijuana inside a balled-up paper towel that was also in the small safe. Although the agent could not say whether it was him or one of his fellow officers who opened the paper towel to discover its contents, he testified that he could smell marijuana emanating from the safe after it was opened, and that it was clear the smell was coming from the paper towel. On cross-examination, Agent Remick-Cook admitted that he failed to mention the plain smell of marijuana in his written report of the executed search and that he was mentioning that fact for the first time on cross-examination at the suppression hearing.

{¶14} The officers further recovered two digital scales, plastic sandwich bags, and $2,500 in cash from the larger safe within the closet. The agent could not recall any details about the digital scales or the "baggies," and there were no photos of them. The agent testified, however, that these items were indicative of narcotics activity and were seized for that reason.

**C. Ruling**

{¶15} On April 12, 2017, the court reconvened to announce its ruling on the motion to suppress. The court found that the warrant affidavit contained sufficient probable cause based on objective facts for the issuing court to conclude that Hakim lived at the Hastings Avenue residence and that there was reason to believe that firearms were

in the home. The court further concluded that the statement concerning the alleged dangerousness of sovereign citizens was unsupported by facts and was, therefore, improper. Nevertheless, the court found that the warrant was still valid and supported by probable cause even if that paragraph were excised from the affidavit. Therefore, the court declined to suppress the evidence on grounds that the search warrant lacked probable cause or was otherwise invalid.

{¶16} On the issue of scope, the court suppressed the pill bottle and its contents on the basis that any evidence of illegal activity was not immediately apparent and in plain view when the officer manipulated the bottle, opened it, and removed its contents. The court also suppressed the suspected marijuana found inside the paper towel, the two digital scales, the plastic bags, and cash, after finding that items were not immediately incriminating in appearance to warrant further investigation without a valid search warrant.

{¶17} The court did not suppress the firearm or other items related to the improper handling of firearms. Following the court's ruling, the prosecution asked to stay proceedings pending appeal. The court granted the motion to stay, and the present appealed followed.

## III. Motion to Suppress

{¶18} On appeal, the state argues that the trial court erred in suppressing the pill bottle and its contents, digital scales, plastic bags, and cash because they were in plain view and their illegal nature was immediately apparent. The state also contends that the

court improperly suppressed the evidence of suspected marijuana because the officers had probable cause to believe, based on the plain smell emanating from the safe, that marijuana was inside the paper towel prior to their opening it. We do not agree.

### A. Standard of Review

{¶19} "Appellate review of a motion to suppress involves a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Appellate courts must defer to the trial court's findings of fact because it is in the best position to evaluate the credibility of witnesses and resolve factual discrepancies. *Id*., citing *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972 (1992). An appellate court must accept a trial court's findings of fact if they are supported by competent, credible evidence. *Id*., citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). Once the facts have been accepted, the court proceeds to a de novo review of whether the facts satisfy the applicable legal standard for the action taken. *Id*. at ¶ 9, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

### B. Fourth Amendment

{¶20} The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated and no warrants shall issue, but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

{¶21} The Fourth Amendment commands in relevant part, that no warrants shall issue except those "particularly describing" the things to be seized. The permissible

scope of a search is therefore governed by the terms set forth in the search warrant. *See Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980). "If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

{¶22} The Fourth Amendment's particularity requirement assures that the police cannot indiscriminately rummage through citizens' personal effects. *See Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Thus, to prevent a "wide-ranging exploratory search," the warrant must enable the executing officers to ascertain and identify with reasonable certainty those items that the issuing judge has authorized them to seize. *See Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987); *Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 69 L.Ed. 757 (1925).

{¶23} In this case, the search warrant permitted the officers to search and seize "[f]irearms; ammunitions; casings; magazines; holsters; documentation (including ledgers) pertaining to firearms, ammunition, and/or their ownership purchase or sale[.]" It did not give the officers the right to search for drugs. The state contends, however, that the plain view and plain smell doctrines permitted the officers to seize the drugs and drug-related items in this case. For the following reasons, we disagree.

**1. Plain View**

**{¶24}** The state argues that the trial court erred in suppressing the white powder that was in the pill bottle because it was in plain view. The plain view doctrine allows police officers to search and seize evidence not described in a search warrant when three conditions are met: (1) the police are lawfully in a position to observe an item firsthand, (2) police inadvertently discovered the object, and (3) the incriminating nature of the object was immediately apparent. *State v. Halczyszak*, 25 Ohio St.3d 301, 303, 496 N.E.2d 925 (1986), citing *Coolidge*; *State v. Williams*, 55 Ohio St.2d 82, 377 N.E.2d 1013 (1978) (adopting the plain view test in Ohio). If all three requirements are met, police may search and seize the items observed without an additional warrant. *Halczyszak* at 303.

**{¶25}** Because police were lawfully at the Hastings Avenue property to execute the search warrant for firearms, the first prong of the plain view test is met. The Ohio Supreme Court defines the last two requirements of of the plain view doctrine as follows:

> The "inadvertent discovery" requirement may be satisfied when police lack antecedent probable cause, i.e., an advance particularized knowledge of, or intent to seize, those objects ultimately seized.

> The "immediately apparent" requirement of the "plain view" doctrine is satisfied when police have probable cause to associate an object with criminal activity.

> In ascertaining the required probable cause to satisfy the "immediately apparent" requirement, police officers may rely on their specialized knowledge, training and experience[.]

*Halczyszak* at paragraphs two, three, and four of the syllabus.

**{¶26}** After review, we find that officers executing the search warrant at the

Hastings Avenue property did not have advanced particular knowledge of, or intent to seize, the drug-related items before they entered the home and began their search. Therefore, the second requirement of the plain view test is also met. Thus, whether police violated the Fourth Amendment by searching and seizing evidence of suspected drug activity turns on the third requirement, i.e., whether the criminality of the objects was immediately apparent. We agree with the trial court that it was not.

{¶27} With respect to the prescription pill bottle and the white powder found inside, Agent Remick-Cook testified that when he first saw the bottle he was not sure what was inside. The criminal nature of the item was not immediately apparent to him; he only suspected that the item contained contraband once he manipulated the bottle by picking it up, turning it, and trying to peer inside the opaque outer container. Even then, he had no confirmation of criminal activity or probable cause to believe that the bottle and its contents were criminal in nature. Nevertheless, the agent decided to open the bottle, pull out its contents, and look inside, at which point he saw a white powder inside plastic bags that he believed to be an illicit substance.[3] While white powder in plain view may have been enough to amount to probable cause of criminal activity to seize the object, the white powder in this case was not immediately apparent and was only discovered through a warrantless search of the bottle that involved manipulation and opening. Accordingly, the plain view doctrine does not justify the agent's search of the pill bottle and its

---

[3]He could not recall how many plastic bags, but agreed that there were at least two according to the photos.

contents and, thus, the trial court did not err when it suppressed them.

{¶28} We further find little merit to the state's argument that the agent believed there might have been evidence of illegal gun ownership inside the bottle. Although the agent testified that he believed there could have been ammunition inside, other testimony discredited the statement. The agent was clear that he never shook the item to see if it rattled or otherwise made any noise that would indicate it contained a bullet, and the agent was evasive when questioned about the weight of the item. The circumstances by which the agent came to search the pill bottle and the observations that he made beforehand belie the agent's testimony that he believed there might be a bullet inside. Therefore, the court did not err in suppressing the evidence, despite the agent's testimony on this point.

{¶29} The state contends that *State v. Johnson*, 8th Dist. Cuyahoga No. 98245, 2013-Ohio-575, supports its arguments in this case. But *Johnson* is distinguishable because when police opened the safe in that case, they immediately saw — in plain view — what appeared to be a white powder substance they believed to be cocaine. Once they saw the suspected cocaine in plain view, they were authorized to seize other items that might contain drug-related contraband or be used in connection with drugs or drug paraphernalia. *Id*. at 33-35. Here, however, the white powder was not in plain view. It was concealed within a pill bottle and, thus, the incriminating nature of its contents was not immediately apparent as it was in *Johnson*. Accordingly, we disagree with the state that *Johnson* supports its arguments in this case.

### 2. Plain Smell

{¶30} The state further argues that the trial court erred when it suppressed the marijuana that the agent found in the "balled up" paper towel. We disagree. Although the trial court did not make any findings of fact with respect to the agent's credibility, it implicitly found the agent's testimony on this issue to be lacking. Agent Remick-Cook never stated anything about smelling marijuana in his summary report of the executed search warrant. He also failed to mention it in his direct examination. It was only upon cross-examination — when defense counsel heavily questioned the agent about how he came to open the paper towel — that the agent mentioned smelling marijuana after the safe was opened. Accordingly, we find no error on the part of the trial court's suppression of the marijuana.

### 3. Other Items

{¶31} Lastly, we cannot say that the court erred in suppressing the digital scales, plastic bags, and $2,500 in cash. None of these is apparently incriminating alone, and there was no evidence that the digital scales or plastic bags contained any drug residue when seized. Furthermore, it is not unusual for a person to store money in a secure location such as a safe.

{¶32} Without the prior discovery of the suspected illicit substances found in the pill bottle and paper towel, the police lacked probable cause to seize these items as evidence of criminal activity. Because the pill bottle and paper towel were illegally searched in violation of the Fourth Amendment's warrant requirement, those items were

properly suppressed and cannot be taken into consideration when determining whether the police had probable cause to believe that the scales, bags, and money were part of an illegal enterprise.

**{¶33}** Accordingly, we affirm the decision of the trial court granting Hakim's motion to suppress evidence of the drugs, digital scales, plastic bags, and money.

**{¶34}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

EILEEN A. GALLAGHER, A.J., and
EILEEN T. GALLAGHER, J., CONCUR