[Cite as *State v. Poff*, 2013-Ohio-5820.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-A-0010** |
| DANIEL S. POFF, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas.
Case No. 2012 CR 095.

Judgment: Affirmed.

*Thomas L. Sartini*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Anna Markovich*, 18975 Villaview Road, Suite 3, Cleveland, OH 44119 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Daniel S. Poff, appeals his January 30, 2013 convictions in the Ashtabula County Court of Common Pleas for illegal manufacture of drugs in violation of R.C. 2925.04(A)(C)(3)(a), a felony of the second degree, and illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A), a felony of the third degree. Appellant's first two assignments of error concern the trial court's denial of his suppression motion. We find no error in the trial court's decision to

deny the suppression motion. In his third assignment of error, appellant argues that his convictions were against the manifest weight of the evidence. However, there is ample evidence in the record to support appellant's convictions. Thus, we affirm appellant's convictions.

{¶2} In its judgment entry dated October 11, 2012, the trial court denied appellant's motion to suppress. With respect to the magistrate's determination of probable cause and issuance of a search warrant, the trial court found the following facts, which are supported in the record.

{¶3} On February 4, 2012, Patrolman Distelrath ("Distelrath") of the Conneaut Police Department saw Andrew Slapnicker's ("Slapnicker") car parked in what he knew to be appellant's driveway. Slapnicker was known by Distelrath to have purchased pseudoephedrine in the past for use in the production of methamphetamine. Distelrath knew that appellant had prior convictions for possession of methamphetamine. Distelrath decided to observe Slapnicker's activities.

{¶4} Slapnicker and a second man, Jared King, exited appellant's home, entered Slapnicker's car, and began to drive away. Distelrath, in his capacity as a police officer, was also familiar with King. Distelrath followed Slapnicker and King and conducted a traffic stop when their vehicle drifted left of center. Slapnicker lied to Distelrath about where he had come from and where he was going. Slapnicker, who was noticeably nervous, consented to a search of the vehicle. He indicated that no contraband was present but that, if there was any, it would be his.

{¶5} Distelrath patted down both Slapnicker and King but found no contraband on either person. The vehicle search revealed a scale, a box of cold packs, and a clear

plastic bag with white residue on it. Distelrath knew these items to be associated with the manufacture, use, and sale of methamphetamine. Distelrath *Mirandized* Slapnicker and permitted King to leave the scene.

{¶6} Slapnicker then agreed to speak with Distelrath. Slapnicker stated that while in appellant's home, he had seen what he thought was heroin on the table and equipment and chemicals used in the production of methamphetamine in a back room. Slapnicker further stated that King had purchased either methamphetamine or heroin at appellant's house and that King had concealed it inside his pants. Distelrath testified that based on his familiarity and past dealings with those concerned, he believed this information to be accurate despite Slapnicker's earlier lies.

{¶7} The affidavit in support of the issuance of a search warrant sets forth substantially similar facts. However, the affidavit differs from the above in two noteworthy respects. First, the affidavit does not state that Slapnicker initially lied to Distelrath. Second, the affidavit avers that Slapnicker told Distelrath he had given King a ride to appellant's home for the purpose of purchasing drugs. Distelrath testified at the suppression hearing that this portion of the affidavit was in error. His testimony was that Slapnicker told him that he did not know why King wanted to go to appellant's home.

{¶8} The trial court made the following findings of fact with regard to other inaccuracies contained in Distelrath's affidavit. First, there is an incorrect date: it reads February 5, when it should be February 4. Second, the color of the plastic bag recovered from Slapnicker's car is stated to be white, but the bag was clear. Third, statements that Slapnicker actually made at the police station are attributed to his

earlier conversation with Distelrath during the traffic stop. The trial court found these errors inadvertent and immaterial.

{¶9} Contrary to appellant's position, the trial court found that Slapnicker had stated both that he gave King a ride to appellant's home for the purpose of purchasing drugs and that King did in fact purchase drugs there. The trial court found these statements were made at the police station rather than during the post-traffic stop conversation. Assuming, arguendo, that Slapnicker had not made these statements, the trial court nonetheless found there existed sufficient information to support the issuance of a warrant.

{¶10} The trial court did not find it significant that Distelrath declined to mention in the affidavit that Slapnicker initially lied about where he had come from and where he was going. During the suppression hearing, defense counsel argued that Slapnicker could not reasonably be considered credible because he lied to Distelrath several times. Distelrath testified that although he caught Slapnicker in several lies, he believed that Slapnicker then decided to tell the truth. The record indicates Slapnicker later testified he was afraid to tell the truth while King was still at the scene.

{¶11} The trial court held:

> Based upon the totality of the circumstances—Slapnicker's firsthand account, Distelrath's prior knowledge of the parties, and Distelrath's observations—there existed a sufficient basis for [the issuing judge] to believe that Slapnicker's statements were true and that there was a fair possibility that methamphetamine labs would be found at [appellant's] residence.

Thus, the highly incriminating evidence obtained during a search of appellant's home was not suppressed.

{¶12} Appellant's first assignment of error states:

4

{¶13} "In denying Appellant's motion to suppress evidence the trial court abused its discretion because it applied an incorrect legal standard."

{¶14} Crim.R. 41(C) sets forth the procedure and requirements for the issuance of a search warrant.  It provides, in relevant part:

> A warrant shall issue on either an affidavit or affidavits communicated to the judge by reliable electronic means establishing the grounds for issuing the warrant.  The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located.
>
> If the judge is satisfied that probable cause for the search exists, he shall issue a warrant * * *.  The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished.

{¶15} The Ohio Supreme Court has adopted the test set forth in *Illinois v. Gates*, 462 U.S. 213 (1983) for determining whether the issuance of a warrant was supported by probable cause.  *State v. McDivitt*, 11th Dist. Lake No. 2011-L-129, 2012-Ohio-2243, ¶18.  As we stated in *McDivitt*:

> In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'

*Id.* at ¶19, quoting *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983).

5

{¶16} In his first assignment of error, appellant avers the trial court's judgment demonstrates it "applied an incorrect legal standard" in ruling on his motion to suppress, to wit: the trial court focused its inquiry on whether there were sufficient facts before the issuing magistrate or judge upon which to believe Slapnicker's statements, rather than whether there was a fair probability the criminal activity was taking place inside appellant's home.

{¶17} We review the trial court's application of the law de novo. *See McDivitt*, *supra*, at 14. In this case, the trial court was faced with the question of whether Slapnicker's information was reliable. Without Slapnicker's information, there was not enough information to establish a fair probability that criminal activity was occurring inside appellant's home. Appellant's argument suggests that by focusing its analysis on the most crucial facts, a trial court errs in its application of the totality of the circumstances standard. We disagree. The trial court specifically found both a "sufficient basis for [the issuing judge] to believe [ ] Slapnicker's statements" *and* "a fair possibility that methamphetamine labs would be found at [appellant's] residence." While this finding was based in large part on Slapnicker's information, the court specifically considered Distelrath's knowledge of the parties, Distelrath's observation of the parties' activities, and the contraband discovered in Slapnicker's car. Thus, the trial court correctly considered the totality of the circumstances and found a fair probability that appellant's home contained evidence of methamphetamine manufacturing, use, and sale.

{¶18} Appellant further argues that the trial court's substitution of the words "fair possibility" in place of the standard's "fair probability" language indicates the trial court

6

applied the standard appropriate in cases where reasonable suspicion, not probable cause, is the issue. Thus, appellant argues, the trial court impermissibly employed a lesser standard. This substitution, however, appears to be merely an oversight. The trial court's judgment entry cites to cases employing a fair probability standard and quotes language from those cases, including the standard from *State v. Nunez*, 180 Ohio App.3d 189, 194 (6th Dist.2008), which indicates the application of a fair probability standard. As a result, substitution of the word "possibility" for "probability" appears to be a typographical mistake, not an attempt to substitute a lower standard.

{¶19} The trial court's factual findings are supported by the record. Considering the totality of the circumstances—Distelrath's knowledge of the parties, his observations, and Slapnicker's statements—there was a fair probability that a search of appellant's home would reveal drugs and equipment used to manufacture methamphetamine.

{¶20} Appellant's first assignment of error is without merit.

{¶21} Appellant's second assignment of error states:

{¶22} "The trial court erred in denying appellant's motion to suppress evidence because the affidavit was not sufficient to establish probable cause for the research [sic] warrant and could not establish grounds for a good-faith exception to the probable cause requirement."

{¶23} Under his second assignment of error, appellant makes two related arguments regarding the search warrant. First, appellant argues that the warrant was issued based on insufficient evidence to support a finding of probable cause. Second, appellant argues that the good-faith exception should not apply because the affidavit

supporting the warrant application omitted important information relevant to the reliability of the informant and attributed to the informant an important statement he never made.

{¶24} Appellate review of a trial court's decision on a motion to suppress involves issues of both law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. Thus, the trial court acts as trier of fact in a suppression hearing and is in the best position to weigh the evidence and evaluate the credibility of the witnesses. *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). On review, we rely on the trial court's finding of facts, provided such findings are based on competent, credible evidence in the record. *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). If the trial court's factual findings are supported by the record, we engage in a second step of analysis consisting of a de novo review of the trial court's application of the law to the facts. *State v. Lett*, 11th Dist. Trumbull No. 2008-T-0116, 2009-Ohio-2796, ¶3, citing *State v. Djisheff*, 11th Dist. Trumbull No. 2005-T-0001, 2006-Ohio-6201, ¶9.

{¶25} A magistrate's finding of probable cause must be afforded great deference. *McDivitt*, *supra*, at ¶20, citing *State v. George*, 45 Ohio St.3d 325, 330 (1989). Neither the lower court nor the appellate court should engage in a de novo review of the sufficiency of probable cause supporting the affidavit. *Id.* Instead, the role of a reviewing court is merely to "ensure that the magistrate had a 'substantial basis' for concluding that probable cause existed to issue a warrant." *Id.* Therefore, "doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.* Thus, our task is to determine whether the facts set forth in the affidavit demonstrate a

substantial basis upon which the magistrate could find a fair probability that contraband was present or that criminal activity was occurring inside appellant's home.

{¶26}  The basis set forth in the affidavit for a warrant to search appellant's home included the following facts, which are supported in the record: (1) Distelrath knew that Slapnicker was known to purchase pseudoephedrine for use in the production of methamphetamine; (2) appellant and his wife were known abusers of methamphetamine; (3) Slapnicker and King were at appellant's home shortly before Distelrath stopped them; (4) Slapnicker behaved nervously when stopped; (5) Distelrath discovered items consistent with the sale and use of methamphetamine in Slapnicker's vehicle; (6) Slapnicker stated the purpose for the visit was that King wished to purchase drugs and that King had purchased either methamphetamine or heroin; and (7) Slapnicker had seen heroin and equipment and chemicals used in the production of methamphetamine and on the table in appellant's home.

{¶27} With regard to the incorrect statement concerning the purpose of Slapnicker and King's visit to appellant's home, we note the trial court found this statement was made before the affidavit was prepared, though not at the time indicated in the affidavit.  Slapnicker lied to Distelrath about where he was coming from and where he was going and about the presence of contraband in his car; however, he later acknowledged those misstatements and gave a credible explanation.

{¶28} Appellant claims that Slapnicker lied about King having purchased drugs at appellant's home, because Distelrath did not find any drugs on King.  It is not clear that Slapnicker lied about King purchasing drugs.  Slapnicker did not tell Distelrath that King had purchased drugs until after King had been released from the scene.  King was

9

frisked and asked to empty his pockets, but there is no indication in the record that a thorough search was performed. Slapnicker indicated that King had placed the purchased drugs inside his pants, not in his pockets. Distelrath testified that King was moving in a furtive manner after the car had been stopped. Thus, it is reasonable for the trial court to have concluded that King purchased drugs, placed them inside his pants when the car was pulled over, and the drugs escaped detection because Distelrath did not search *inside* King's pants before King was released.

{¶29} Appellant has drawn our attention to the inaccuracies in Slapnicker's account because Slapnicker's statements as an informant were crucial to the finding of probable cause. Appellant essentially argues that Slapnicker is a liar whose statements are not entitled to belief. Thus, we address Slapnicker's status and credibility as an informant. Courts have generally recognized three categories of informant: the anonymous informant, the known informant, and the identified citizen informant. *See Maumee v. Weisner*, 87 Ohio St.3d 295, 300 (1999).

{¶30} An anonymous informant generally cannot be presumed reliable, as the reliability of the source or the basis of his knowledge cannot be determined; thus, before acting on information from an anonymous informant, the police must corroborate the information. *Id.*, citing *Alabama v. White*, 496 U.S. 325, 329 (1990). An identified citizen informant, who is the victim or witness of a crime, is presumed reliable. *State v. Livengood*, 11th Dist. Lake No. 2002-L-044, 2003-Ohio-1208, ¶11. "If an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary." *Illinois v. Gates*, *supra*, at 233-234. Finally,

10

somewhere in between is the known informant: typically a member of the criminal community, but whose identity is known to the police and who has provided reliable information in the past. *See Maumee*, *supra*, at 300.

{¶31} The parties disagree as to how Slapnicker should be classified. The state characterizes Slapnicker as an identified citizen informant, while appellant urges that, under the circumstances, he is more akin to a criminal or "known" informant. Slapnicker does not fit entirely into only one of the categories. First, Slapnicker was not a typical identified citizen informant. Though his identity was known to the police, Slapnicker neither came forward voluntarily to report crime out of a sense of civic duty nor as a victim reporting a crime. Slapnicker offered information to a police officer in order to benefit himself regarding his own criminal activities. Second, Slapnicker was not an anonymous informant. The information he offered was given to the police in a face to face encounter. Third, Slapnicker also does not fit neatly into the "known informant" category. Distelrath testified that Slapnicker is part of the criminal community, as Slapnicker is known to purchase pseudoephedrine for use in the production of methamphetamine. However, there was no indication in Distelrath's affidavit that Slapnicker had provided reliable information in the past. Instead, Distelrath testified that he believed Slapnicker's statements regarding criminal activities taking place at appellant's home because Distelrath saw Slapnicker at the home minutes before the statements were made. That fact supports Slapnicker's basis of knowledge, but says little about his veracity.

{¶32} Nevertheless, the issuing judge had a sufficient basis upon which to assess Slapnicker's veracity. Distelrath saw Slapnicker leave appellant's house shortly

11

before Distelrath pulled Slapnicker over. The affidavit reflects Distelrath's familiarity with Slapnicker, King, appellant, and appellant's wife. Distelrath was aware that Slapnicker was a known purchaser of pseudoephedrine for use in the production of methamphetamine, that appellant had prior arrests and convictions for methamphetamine related offenses, and that appellant's wife was a known methamphetamine abuser. Distelrath observed materials consistent with methamphetamine use and sale in Slapnicker's car and used this evidence to question Slapnicker about his recent activities. While we find this a difficult case because the affidavit did not contain anything specific to support Slapnicker's veracity, we believe it is appropriate here to defer to the issuing authority's judgment. *McDivitt*, *supra*, at ¶20.

**{¶33}** Appellant next argues that, assuming the affidavit was not supported by probable cause, the good-faith exception should not apply. This argument is rendered moot by our holding that the warrant was supported by probable cause.

**{¶34}** Under these circumstances, the trial court did not err by admitting evidence obtained in the search of appellant's home. Appellant's second assignment of error is without merit.

**{¶35}** Appellant's third assignment of error states:

**{¶36}** "The trial court's verdict that appellant was guilty of illegal manufacture of drugs and illegal assembly or possession of chemicals for the manufacture of drugs is against the manifest weight of the evidence in violation of Article IV, Section 3, of the Ohio Constitution."

**{¶37}** In his third assignment of error, appellant argues that his convictions were against the manifest weight of the evidence. "To determine whether a verdict is against

12

the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact 'lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Willoughby Hills v. Lyons*, 11th Dist. Lake No. 2012-L-136, 2013-Ohio-4099, ¶18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In weighing the evidence in a criminal case, "the appellate court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses." *Id.*, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶38} Appellant first argues that no evidence was adduced at trial to support a finding of his actual or constructive possession of methamphetamine paraphernalia. Second, appellant argues that nothing in the record indicates that appellant had knowledge that any chemicals or equipment he possessed could be used to manufacture methamphetamine. Finally, appellant argues that nothing in the record supports a finding that he intended to use such chemicals or equipment in the production of methamphetamine.

{¶39} Contrary to appellant's contentions, there is ample evidence in the record to support the findings that appellant possessed methamphetamine paraphernalia, was aware of the nature of that paraphernalia, and intended to use it to manufacture methamphetamine. Appellant occupied the home in which such items were found and was present when the search was conducted and the items discovered. Appellant has previous arrests and convictions for methamphetamine related offenses. Slapnicker testified that after he and King arrived at appellant's house, King and appellant went into

13

the back room to conduct a drug transaction. Slapnicker testified that this room contained equipment and chemicals used to manufacture methamphetamine. Slapnicker testified that he saw appellant removing finished methamphetamine from a coffee filter on which it had been left to dry. Furthermore, Slapnicker testified that he supplied appellant with pseudoephedrine, a methamphetamine precursor, for the purpose of methamphetamine manufacturing on several occasions in the past. Under these circumstances, we hold that the jury did not "lose its way" or create a "manifest miscarriage of justice" in finding that appellant had possession of equipment and chemicals used in the manufacture of methamphetamine, was aware of the nature of these items, and intended to use them to produce methamphetamine. *Thompkins*, *supra*, at 387.

{¶40} The cases cited in support of appellant's arguments, particularly those related to the issue of possession, are readily distinguishable from the present matter.

{¶41} Appellant's reliance on *State v. Haynes*, 25 Ohio St.2d 264 (1971), is misplaced. *Haynes* held that where drugs were discovered in a residence in which others resided and in which the defendant *had not occupied during the week preceding the search*, the mere fact that the defendant was the legal lessee of the premises was insufficient to establish possession. In this case, appellant occupied the house at all times relevant to the search. He was present when the search occurred, and he was implicated by an informant. There is nothing in the record to suggest that appellant was absent from his home for a lengthy period of time prior to the search.

{¶42} Appellant's reliance on *State v. Swalley*, 11th Dist. Ashtabula No. 2010-A-0008, 2011-Ohio-2092, is similarly misplaced. In that case, which was reviewed for

14

sufficiency of the evidence rather than manifest weight, the defendant "was not present when the various items known to be associated with the manufacturing of methamphetamine were found." *Swalley* at ¶67. The items were not tested for fingerprints, and the only evidence presented by the state "to support a finding of constructive possession of the methamphetamine paraphernalia was [the defendant's] temporary occupation" of the living room couch on which many others stayed. *Id.* at ¶68. In this case, appellant was present when the methamphetamine paraphernalia was found, and there is testimony in the record indicating that he was seen removing the finished product from the coffee filters on which it had collected and dried. Furthermore, appellant was not a temporary visitor, but in his own home.

{¶43} *State v. Johnson*, 8th Dist. Cuyahoga No. 98245, 2013-Ohio-575, another case cited by appellant, is also factually distinguishable. In *Johnson*, drug residue was discovered in a safe, which was in the defendant's basement under a pile of clutter. *Id.* at ¶44. Others lived in the house and no evidence was adduced that the defendant owned or had even been near the safe. *Id.* In this case, evidence of methamphetamine use and production was scattered throughout the home; appellant was discovered in the home, near the evidence; and witness testimony indicated that appellant was seen removing the finished product from the coffee filters on which it had collected and dried.

{¶44} Finally, appellant argues that we cannot credit Slapnicker's testimony, as he had already proven unreliable. On a manifest weight challenge, however, we must defer to the fact finder's factual determinations on the weight of evidence and credibility of witnesses. *Thompkins*, *supra*, at 387. There was evidence presented that, if

believed by the fact finder, supported a conclusion that appellant committed the offenses for which he was found guilty.

{¶45} Appellant's third assignment of error is without merit.

{¶46} For the foregoing reasons, we find that appellant's assignments of error are without merit. The judgment of the Ashtabula County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.


_____


COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶47} I respectfully dissent.

{¶48} In affirming the trial court's judgment, the majority holds that the trial court committed no error in denying appellant's motion to suppress and that there is ample evidence to support his convictions. Because this writer believes that the search warrant was defective, I would reverse and remand.

{¶49} The Fourth Amendment to the United States Constitution grants defendants the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." This right has been incorporated against the states through the Fourteenth Amendment and is reiterated by Article I, Section 10 of the Ohio Constitution. It is well-established that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in state

16

court." *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). Stated differently, any evidence seized pursuant to an invalid search warrant must be excluded at trial. *Franks v. Delaware*, 438 U.S. 154, 156 (1978).

{¶50} In *Franks*, the United States Supreme Court enunciated a two-part test for trial courts to use in evaluating claims of misleading statements contained in an affidavit. This test, embraced by Ohio courts and the Sixth Circuit alike, is succinctly stated as follows:

{¶51} "'(A) court considering whether to suppress evidence based on an allegation that the underlying affidavit contained false statements must apply a two-part test: (1) whether the defendant has proven by a preponderance of the evidence that the affidavit contains deliberately or recklessly false statements and (2) whether the affidavit, without the false statements (* * *) provides the requisite probable cause to sustain the warrant.'" *State v. Weimer*, 8th Dist. Cuyahoga No. 92094, 2009-Ohio-4983, ¶32, quoting *United States v. Charles*, 138 F.3d 257, 263 (6th Cir.1998).

{¶52} Stated differently, before considering whether probable cause existed to issue a warrant, the court must strip the affidavit of any false statements and averments, and layer in any material facts that were omitted but should have been included. *Franks, supra,* at 171; *Weimer, supra,* at ¶21-22; *State v. Sells*, 2d Dist. Miami No. 2005-CA-8, 2006-Ohio-1859, ¶11. Only then, upon reconstructing the picture that the affidavits should have painted, is the court to examine probable cause. *Franks* at 171-172.

{¶53} In this case, Patrolman Distelrath's affidavit was not sufficient to establish probable cause for the search warrant. The false statements made by Slapnicker call

17

into question and affect his credibility. Once Patrolman Distelrath realized that Slapnicker gave untruthful answers to some of his inquiries, the officer should have demonstrated in his affidavit why he had a reason to believe all of the other statements made by Slapnicker. The officer also had a duty to read the affidavit before presenting it to the judge to make sure that the affidavit provided correct information.

{¶54} Patrolman Distelrath did not provide the judge with any grounds or circumstances that Slapnicker's information regarding appellant and the alleged activities at appellant's house were reliable. There was no basis in the affidavit to indicate the informant's credibility, honesty, or reliability. Slapnicker's allegations were unsupported by independent police investigation. Thus, there was no sufficient probable cause basis to believe that illegal substances or activities occurred at appellant's residence.

{¶55} The totality of the circumstances demonstrates that Patrolman Distelrath's affidavit did not provide a sufficient basis for the judge to conclude that there was a fair probability that contraband or evidence of a crime would be found in appellant's residence. The omitted facts and other misrepresentations contained in the affidavit did not support a finding of probable cause nor meet a good faith exception to the probable cause requirements. Therefore, this writer believes that the trial court committed reversible error in denying appellant's motion to suppress. Thus, I would reverse the trial court's judgment and remand the matter for further proceedings.

{¶56} Based on the foregoing, I dissent.